# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK GARCIA,<br><br>           Plaintiff,<br><br>    v.<br><br>PRAXAIR, INC.,<br><br>           Defendant. | Case No. 1:18-cv-01493-SAB<br><br>ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(ECF Nos. 14-17, 18, 19-20) |

Patrick Garcia ("Plaintiff") filed this action against Praxair, Inc. ("Praxair" or "Defendant") pursuant to 28 U.S.C. § 1332(a).[1] Currently before the Court is Defendant's motion for partial summary judgment filed November 15, 2019.

The Court heard oral argument on December 18, 2019. Counsel Tom Duckworth and Dena Narbaitz appeared for Plaintiff, and counsel Jason Borchers appeared telephonically for Defendant. Having considered the moving, opposition, and reply papers, the declarations and exhibits attached thereto, arguments presented at the December 18, 2019 hearing, as well as the Court's file, the Court issues the following order.

## I.

## BACKGROUND

Plaintiff was hired to work as a Standard Plant Technician/Field Service Technician for

---

[1] Defendant has not challenged jurisdiction in this action. Although the complaint does not state the basis for jurisdiction, Plaintiff does allege that he is a resident of California and Defendant is a citizen of Delaware. (ECF No. 1 at ¶¶ 1, 2.) Similarly, Plaintiff does not address the jurisdictional amount. However, based on the number of violations of state law alleged in the complaint and considering the damages, penalties and attorney fees sought by Plaintiff, the Court finds that the amount in controversy meets the jurisdictional requirement of $75,000.

Defendant on October 17, 2016.  Plaintiff was the sole Praxair employee responsible for keeping Defendant's Chowchilla plant running around the clock to produce oxygen for Defendant's client, Certain Teed Corporation.  On February 6, 2017, Plaintiff was injured when he fell from a ladder while attempting to repair a valve.  Plaintiff was unable to work for some period of time following the fall and filed a Worker's Compensation claim.  Plaintiff was terminated from his employment on November 7, 2017.

On October 29, 2018, Plaintiff filed the instant action alleging disability discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, by termination of employment, failure to accommodate, and failure to engage in the interactive process; wrongful termination in violation of public policy; and the following violations of California Labor Code: retaliation in violation of sections 6310 and 1102.5, failure to pay overtime in violation of section 510(a), and failure to pay wages upon discharge in violation of section 201.  Defendant filed an answer to the complaint on January 7, 2019.

The parties consented to the jurisdiction of the magistrate judge and this matter was reassigned to the undersigned for all purposes on February 13, 2019, and the scheduling order issued setting the pretrial and trial dates in this matter.

On November 15, 2019, Defendant filed the instant motion for partial summary judgment, exhibits, and deposition transcripts.  On December 4, 2019, Plaintiff filed an opposition to the motion for summary judgment.  Defendant filed a reply and statement of opposition to Plaintiff's separate statement of additional material disputed facts on December 11, 2019.

## II.

## UNDISPUTED FACTS[2]

1.      In October 2017, Plaintiff began employment with Defendant as a standard plant technician at Praxair's Chowchilla plant.

2.      Plaintiff was typically the only Praxair employee working at the plant at any given time.

---

[2] The statement of undisputed facts (U.F.) is compiled from the joint statement of undisputed facts filed in support of Defendant's motion for summary judgment (ECF No. 14-2) and those facts that are undisputed on the parties' separate statements of disputed facts (ECF No. 18-3) which are relevant to the current motion.

3.     Plaintiff's job duties included, *inter alia*, "[m]aintenance of the plant mechanically, electrically, pneumatically." Basic duties were to keep the plant running and Plaintiff was on call 24/7.

4.     More specifically, Plaintiff's maintenance duties included conducting "oil changes, blower motors, vibration checks of motors to check internal bearing wear, greasing valves, lubricating valves, looking at the computer system that monitors the plant, making sure temperatures and pressures are within allowable ranges. Preventative maintenance as well, changing components after certain times and by the maintenance schedule for that plant."

5.     Plaintiff's maintenance duties involved use of a number of tools, including wrenches, hammers, screwdrivers, air operated impact guns, overhead winches and pulleys to lift heavy objects, stepping stools and ladders."

6.     Plaintiffs duties also involved stocking parts that ranged between 1 to 30 pounds, including items such as filters, lube and oils, grease, and pipe and electrical fittings.

7.     According to Plaintiff, his maintenance duties were "all over the place" and would vary significantly, ranging from 50 percent to zero on any given day.

8.     Plaintiff's job required him to occasionally lift over 45 to 75 pounds, at least with the assistance of a mechanical winch or overhead crane.

9.     The job further required "taking readings, calibrations of equipment and sensors", as well as cleanup and organization.

10.     His job typically also included driving a service pickup up to two to three hours per day and up to eight hours on occasion.

11.     Other duties also included quality assurance, budgeting, spreadsheet entries, being on call for after-hours issues, ordering and stocking parts. In total, typically his job involved one to two hours per day for computer and administrative duties, while the rest of his time involved standing (other than when driving).

12.     Plaintiff suffered serious head and other injuries as a result of the fall and was hospitalized for approximately three days.

13.     After Plaintiff's release from the hospital, he was first seen by Dr. Anthony

Bianchi on or about February 16, 2017, who issued a note indicating that Plaintiff "Cannot return to work at this time".

14.    On February 23 and again on March 3, Dr. Bianchi again extended Plaintiff's leave.  On March 10, Dr. Bianchi briefly issued a work release for Plaintiff to perform "safe transitional work" and "light duty please", stating that Plaintiff was precluded from performing work at heights and imposed a 30-pound lifting restriction.

15.    Dr. Bianchi also recommended at the March 3 visit that Plaintiff undergo physical therapy and a neuro-cognitive evaluation.

16.    On March 24, 2017, Dr. Bianchi recommended inpatient treatment at the Centre for Neuro Skills (CNS) in Bakersfield, California, to treat Mr. Garcia's Traumatic Brain Injury.

17.    Dr. Bianchi's recommended dates of treatment were March 30, 2017, through May 14, 2017.

18.    Ultimately, Defendant determined that it might be able to at least temporarily accommodate Plaintiff's restrictions provided a plan was put into place to meet his work restrictions.  Accordingly, the company scheduled an appointment with a physician to confirm Plaintiff's work restrictions.

19.    Thereafter, Plaintiff spoke with Mr. Fog at Praxair, who said he would look into it. Mr. Fog responded to Plaintiff a few days later to let him know there was some conflict.

20.    On March 31st, Dr. Bianchi issued a work status report taking Plaintiff completely off work.

21.    On or about April 13th, Dr. Bianchi again extended Plaintiff's prior note taking him completely off work through at least May 1.

22.    On or about June 21st, Plaintiff began an inpatient neurological rehabilitation program in Bakersfield, where he remained until approximately July 20th.

23.    At the time of his inpatient admission, CNS also requested follow up day treatment through July 31.

24.    Plaintiff's wife gave all of the information to Dr. Bianchi, who did not send the information to Defendant's third-party administrator immediately.

25.     On July 20, Dr. Bianchi again recommended outpatient treatment for Plaintiff at CNS.  Dr. Bianchi's recommended dates of treatment were July 24, 2017, through August 31, 2017.

26.     A few days after his release from inpatient rehab program, on or about July 25th, Dr. Bianchi issued an updated work release that included "Safe Transitional Work, if available" through at least Sept. 5th.  The release further required "light duty and no work at heights.  Est. MMI 10/1/17".

27.     After receiving Dr. Bianchi's September 5th note, Defendant sought follow-up clarification regarding Dr. Bianchi's work restrictions, including the extent to which he could drive, whether he was still taking medication, and whether his working at heights was limited to none.

28.     On or about September 26th, Dr. Bianchi provided clarification of his prior note, indicating that Plaintiff could work at "5 feet for now and to advance", that he could drive both personally and commercially, identifying specific medication, and noting that the medication would not significantly affect his ability to perform his regular customary duties.

29.     After receiving Dr. Bianchi's clarification, Defendant engaged in internal discussions that included Ms. Angelovski, Mr. Fog and Mr. Breinlinger relating to whether it could accommodate Plaintiff's restrictions.  They ultimately determined Defendant could do so pending a second opinion in a return to work exam, which was originally scheduled for October 10.  It was anticipated that Plaintiff would return to work on limited duty the same day.

## III.

## LEGAL STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case...."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## IV.

## OBJECTIONS

Plaintiff has filed objections to the declarations of Steve Fog, Ken Breinlinger, and Melissa Angelovski that were submitted in support of Defendant's motion for partial summary judgment.  Similarly, in their reply, Defendant objects to certain of Plaintiff's separate statement of additional material disputed facts.  To the extent that either party objects to the evidence, the

1  Court does not consider evidence that is irrelevant or legal conclusions that are contained within
2  the declarations.  To the extent that the challenged evidence is material to the Court's decision,
3  the objections will be addressed within this decision.

4      **A.    Declaration of Ken Breinlinger**

5      Plaintiff objects to the declaration of Ken Breinlinger on the ground that he was not
6  disclosed as a witness in Defendant's initial disclosures.  Defendant does not address this
7  objection in its reply.

8      Rule 26 of the Federal Rules of Civil Procedure requires a party to provide to the other
9  parties, the names of individuals likely to have discoverable information.  Fed. R. Civ. P.
10 26(a)(1)(A)(i).  Additionally, the parties have a continuing obligation to supplement their
11 disclosures and discovery responses in a timely manner when they learn that the disclosure or
12 response was incomplete or incorrect.  Fed. R. Civ. P. 26(e)(1)(A).  Here, Plaintiff contends, and
13 Defendant does not dispute, that Ken Breinlinger was not disclosed as a witness in this case.  Rule
14 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule
15 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a
16 motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."
17 Fed. R. Civ. P. 37(c)(1).  Due to the " 'self-executing' and 'automatic' nature of Rule 37(c)(1)
18 sanctions," parties have a right to expect that only disclosed witnesses will be used to support the
19 disclosing party's claims and defenses."  Guzman v. Bridgepoint Educ., Inc., 305 F.R.D. 594, 604
20 (S.D. Cal. 2015) (citations omitted).

21     Defendant has not demonstrated that the failure to disclose Ken Breinlinger was
22 substantially justified or harmless.  See Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d
23 1101, 1107 (9th Cir. 2001) (party facing sanctions for disclosure violations has obligation to show
24 that its failure to comply was either justified or harmless); R & R Sails, Inc. v. Ins. Co. of
25 Pennsylvania, 673 F.3d 1240, 1246 (9th Cir. 2012) (party facing sanctions bears burden of
26 proving failure to disclose was substantially justified or harmless).  Accordingly, Plaintiff's
27 objection to the declaration of Mr. Breinlinger is sustained.  The Court will not consider the
28 declaration of Ken Breinlinger in deciding the instant motion.

# V.

## DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims that he was discriminated against due to his disability.  Defendant argues that Plaintiff's disability claims fail because after he was injured, Defendant immediately accommodated him by placing him on a leave of absence as requested by his physician, and each time that Plaintiff's physician released him with restrictions those restrictions repeated changed.  Finally, when the restrictions changed in October 2017, Plaintiff did not respond to Defendant's request for further documentation on his ability to perform the essential duties of his job.

Defendant contends that no material factual dispute exists as to Plaintiff's second cause of action for failure to engage in the interactive process because the undisputed evidence shows that it took numerous steps and engaged in a thorough process over the course of nine months to accommodate Plaintiff and return him to work on limited duty.  Defendant argues that after Plaintiff's limitations changed in October 2017, he was given an opportunity to provide updated medical information to assist in determining when Plaintiff would be able to perform the essential functions of his position in the foreseeable future and Plaintiff did not respond.

Defendant also moves for summary judgment on Plaintiff's claim for failure to reasonably accommodate for similar reasons.  Defendant contends that Plaintiff was reasonably accommodated from the date of his injury through the date of his termination.  After seeking and obtaining clarification of his work restrictions, Defendant determined that it could accommodate his restrictions but Plaintiff's work restriction changed again and he was to begin further neurological treatment in Bakersfield which would be four days a week on a weekly basis beginning in mid-November.  Defendant asserts that Plaintiff was provided with the opportunity to submit updated documentation from his doctor that he would be able to return to work or that he would be able to do so in the future, but Plaintiff never responded.

Defendant argues that it is entitled to summary judgment on the disability discrimination claim due to termination because an employer is not required to wait indefinitely for an employee's medical condition to improve.

Finally, Defendant asserts that summary judgment should be granted on the wrongful termination in violation of public policy for the same reasons that his disability discrimination claims fail.

Plaintiff counters that Defendant unilaterally ended the interactive process and invented the narrative that he would never return to work to avoid liability under California law. Plaintiff contends that when Defendant learned that he needed further outpatient treatment in October of 2017, after having found that Defendant could accommodate his restrictions, Defendant drafted several letters stating the intent to terminate him. Plaintiff argues that Defendant's decision to terminate Plaintiff after he informed Defendant that he would starting out patient treatment is the very definition of an employer failing to engage in the interactive process.

Plaintiff contends that Defendant cannot prevail on the failure to accommodate claim because he never refused a reasonable accommodation; Defendant did not consider alternative work positions for Plaintiff; Plaintiff was continued on leave even though his doctor opined that he could return to work with restrictions; and Defendant refused to extend Plaintiff's leave when it learned that he would be attending a thirty day outpatient treatment in November 2017.

Plaintiff argues that nine months leave is not sufficient to constitute a reasonable accommodation and it is undisputed that he was terminated because of his disability. Plaintiff contends that he was only going into a thirty-day outpatient treatment program and disallowing a short-term leave violates the very purpose of the disability laws. Plaintiff states that there are no facts to support that he intended to remain on leave indefinitely and the work status reports demonstrate that he was able to return to work in March, October, and December.

Finally, Plaintiff argues that since there are disputed issues of fact as to his disability discrimination claim, his claim for termination in violation of public policy should also survive summary judgment.

Defendant replies that Plaintiff's primary objection is that it failed to adequately explain the intricacies of the interactive process. Defendant contends that the FEHA requires the parties to engage in the interactive process, and there is no dispute of fact that it met its obligation as a matter of law. Defendant argues that Plaintiff's assertion that it unilaterally ended the interactive

1  process is without merit as Plaintiff was advised of the need for further documentation and the
2  consequences of failing to provide the documentation. Defendant takes the position that Plaintiff
3  had the opportunity to clear up any misunderstanding to the extent that such existed and he did
4  not respond.

5      Defendant responds that Plaintiff attempts to hold it liable for the delays in treatment
6  caused by the worker's compensation carrier, but that there is no evidence that medical treatment
7  is a reasonable accommodation under the FEHA. Defendant contends that the undisputed
8  evidence shows that Plaintiff was discharged because he failed to provide updated medical
9  information as requested by Defendant once his restrictions again changed in October 2017.

10     **A.    FEHA Claims**

11     Here, Plaintiff alleges that Defendant failed to engage in the interactive process, failed to
12  accommodate, and terminated him in violation of the FEHA. The FEHA creates a separate cause
13  of action based on each of these unlawful employment practices.[3] Swanson v. Morongo Unified
14  Sch. Dist., 232 Cal.App.4th 954, 964 (2014), as modified on denial of reh'g (Dec. 23, 2014).

15     1.    Failure to Accommodate

16     FEHA provides that it is unlawful for an employer "to fail to make reasonable
17  accommodation for the known physical or mental disability of an applicant or employee." Cal.
18  Gov't Code § 12940(m)(1). FEHA requires employers to make reasonable accommodation for
19  the known disabilities of employees to enable them to perform a position's essential functions,
20  unless doing so would produce undue hardship to the employer. Cal. Gov't Code § 12940(m).
21  "A reasonable accommodation is a modification or adjustment to the work environment that
22  enables the employee to perform the essential functions of the job he or she holds or desires."
23  Nealy v. City of Santa Monica, 234 Cal.App.4th 359, 373 (2015). The employer has an
24  "affirmative duty" to reasonably accommodate a disabled employee and it is a continuing duty
25  that is not exhausted by a single effort. Swanson, 232 Cal.App.4th at 969. However,
26  "elimination of an essential function is not a reasonable accommodation." Nealy, 234

---

27  [3] California courts look to cases under the Americans with Disabilities Act in interpreting the FEHA. Hanson v.
28  Lucky Stores, Inc., 74 Cal.App.4th 215, 224 n.7 (1999); Swonke v. Sprint Inc., 327 F.Supp.2d 1128, 1137 (N.D. Cal. 2004).

Cal.App.4th at 375.

Unless the employer can demonstrate, after engaging in the interactive process, that the accommodation would pose an undue hardship, an employer has an affirmative duty to provide such reasonable accommodation where a disability is known to such employer. Prilliman v. United Air Lines, Inc., 53 Cal.App.4th 935, 950-51 (1997). The burden is on Defendant, as the moving party, to show no triable issue exists on a claim based on failure to accommodate.[4] Jensen v. Wells Fargo Bank, 85 Cal.App.4th 245, 260 (2000). The elements of a failure to accommodate claim are: 1) the plaintiff has a disability or was regarded as suffering a disability; 2) the plaintiff is qualified for the position in that he or she can perform the essential functions; and 3) the employer failed to reasonably accommodate the employee's disability. Hernandez v. Rancho Santiago Cmty. Coll. Dist., 22 Cal.App.5th 1187, 1194 (2018); Cornell v. Berkeley Tennis Club, 18 Cal.App.5th 908, 926 (2017); Cuiellette v. City of Los Angeles, 194 Cal.App.4th 757, 766 (2011); Jensen, 85 Cal.App.4th at 255; Swanson, 232 Cal.App.4th at 969. It is undisputed for the purposes of this motion that Plaintiff had a physical disability that is protected by the FEHA.

"[T]he employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." Jensen, 85 Cal.App.4th at 263. However, "an employer is liable under section 12940(m) for failing to accommodate an employee only if the work environment could have been modified or adjusted in a manner that

---

[4] Defendant contends that the McDonnell-Douglas framework applies to Plaintiff's failure to accommodate claim. (ECF No. 14-1 at 13.) However, while the McDonnell-Douglas framework applies to disparate treatment claims, Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1242 (9th Cir. 2013); Cornell v. Berkeley Tennis Club, 18 Cal.App.5th 908, 926 (2017), the First District Court of Appeals held that the McDonnell-Douglas framework does not apply to failure to accommodate claims relying on Weigel v. Target Stores, 122 F.3d 461, 464 (7th Cir. 1997), Cornell, 18 Cal.App.5th at 926.

would have enabled the employee to perform the essential functions of the job." <u>Nadaf-Rahrov v. Neiman Marcus Grp., Inc.</u>, 166 Cal.App.4th 952, 975 (2008).

Here, following Plaintiff's work-related injury, a doctor's note was submitted around February 16, 2017 stating that Plaintiff was unable to work. (U.F. 13.) Plaintiff received doctor's notes on February 23, 2017 and March 3, 2017 continuing his leave. (U.F. 14.) During this time period, it is undisputed that Plaintiff was accommodated by being placed on leave. "FEHA's implementing regulations specifically enumerate paid or unpaid leave as a form of accommodation that can satisfy § 12940(m)(1). 2 C.C.R. § 11068(c).

On March 10, 2017, Dr. Bianchi issued a work release for Plaintiff stating that he was able to perform "safe transitional work" and "light duty" and that Plaintiff was precluded from performing work at heights and was limited to lifting 30 pounds. (U.F. 14.) Upon receipt of the work release, Ms. Angelovski and Plaintiff's regional manager discussed the extent to which Defendant would be able to accommodate Plaintiff's work restrictions. (Decl. of Melissa Angelovski ("Angelovski Decl.") ¶ 5.[5]) Ms. Angelovski and other representatives made the

---

[5] Plaintiff objects to portions of Ms. Angleovski's declaration on the ground that it contradicts her deposition testimony. (ECF No. 18-5 at 5.) Plaintiff argues that in her deposition Ms. Angelovski could not explain why Defendant did not return Plaintiff to work or whether she was even involved in any of the discussions to return Plaintiff to work. (<u>Id.</u> at 6.) Ms. Angelovski was deposed on September 25, 2019 as the person most qualified for Defendant. During her deposition, Ms. Angelovski was asked about the reasonable accommodation process at Praxair. (Angelovski Depo 29:1-2.) She asked if the question was in relation to Plaintiff's case. (<u>Id.</u> at 29:4-5.) She was directed that the question was about the policy and not specifically as to Plaintiff. (<u>Id.</u> at 29:7-11.) Ms. Angelovski stated that she was unable to testify on behalf of how every manager within the company would handle a request and could only tell what happened in Plaintiff's case. (<u>Id.</u> at 33:6-11.) She does not support the entire company from an HR standpoint. (<u>Id.</u> at 34:15-20.) Once an accommodation request is received by management,

> the process would be to determine whether or not we can accommodate the request and to determine that it doesn't create an undue hardship on the company. And so that determination is made amongst probably management, HR, and then the determination is stated back to the administrator whether or not they can request -- they can accommodate that request.

(<u>Id.</u> at 36:15-21.) The administrative management sends a request to HR asking whether or not the restrictions stated by the doctor can be accommodated. (<u>Id.</u> at 37:11-13.) They would then determine whether the request can be accommodated or whether it would be an undue hardship on the company and would respond back to the administrator as to whether the request can be accommodated. (<u>Id.</u> at 37:25-38:5.)
Ms. Angelovski was asked about the interactive process with Plaintiff and her role. (<u>Id.</u> at 66:3-5.) She responded, "I was part of the team that was involved and engaged in the process, the decision making, and the interactive process between Mr. Garcia, management, our administrator, so I was part of the team that was engaged in this process throughout the entire time Mr. Garcia was out on medical leave." (<u>Id.</u> at 66:6-11.) Plaintiff's supervisors, Jason Lucas and later Steve Fog would have been the most interactive with Plaintiff during the process. (<u>Id.</u> 67:8-20; 70:8-10.) Ms. Angelovski could not recall if she communicated specifically with Plaintiff. (<u>Id.</u> at 100:3-6.) Although Ms. Angelovski was unable to recall what occurred on a specific date more than two years prior to the deposition, it is clear from her deposition testimony that she was involved in the interactive process and Plaintiff's objections on these grounds are overruled.

determination that Defendant might be able to temporarily accommodate Plaintiff's work restrictions if a plan were in place to ensure his compliance with the restrictions.  (Id. at ¶ 6.)  It was Defendant's regular practice to send employees on modified or limited duty who are employed in a safety sensitive position to a third-party clinic to verify their work restrictions if they can otherwise be accommodated.  (Id. at ¶ 7.)  Due to the fact that Plaintiff worked in a safety sensitive position, an appointment was scheduled with a physician to confirm his work restrictions prior to him being allowed to return to limited duty.[6]  (Id. at ¶ 6.)  If consistent with business necessity, an "employer may require a doctor's evaluation or other medical testing to determine whether the employee poses a safety risk and whether the employee can perform the essential functions of their position."  Medical examinations, Rothstein, Disabilities and the Law § 4:18 (4th ed.); see also White v. Cty. of Los Angeles, 225 Cal. App. 4th 690, 705 (2014) (an employer concerned regarding an employee's fitness to return to work may require a medical examination at the employer's expense).

On March 31, 2017, Dr. Bianchi took Plaintiff off work completely through April 13, 2017.  (U.F. 20.)  On April 13, 2017, Dr. Bianchi continued Plaintiff off work completely through May 1, 2017.  (U.F. 21.)

On May 1, 2017, Dr. Bianchi released Plaintiff to return to modified duty on May 23, 2017.  (ECF No. 18-1 at 26.)  Dr. Bianchi stated that Plaintiff was able to do "Safe TRANSITIONAL WORK" if available.  (Id.)  Plaintiff was on sedentary duty only with minimal use of his left arm.  (Id.)  These restrictions continued through June 13, 2017.  (ECF No. 18-1 at 27.)  Due to the nature of Plaintiff's position, "which required substantial physical activity to ensure proper and continuing operation of the plant, the fact that a substantial majority of Plaintiff's job duties required physical activity, and also given the substantial limitations that sedentary only work would have on his regular and most important job duties, the decision was

_____

[6] The parties both address an issue with the return to work physical.  However, it is unclear when this occurred. Plaintiff cites to deposition testimony indicating that the appointment for the return to work physical was in June 2017 after Mr. Fog had become his supervisor.  (Videotaped Depo. of Patrick Garcia ("Garcia Video Depo.") 128:12-129:17.)  However, Dr. Bianchi took Plaintiff off work on March 31, 2017, prior to the appointment with the doctor.

made to continue Plaintiff's leave of absence at that time."[7]  (Angelovski Decl. ¶ 10.)

It is undisputed that Plaintiff's job duties included "oil changes, blower motors, vibration checks of motors to check internal bearing wear, greasing valves, lubricating valves, looking at the computer system that monitors the plant, making sure temperatures and pressures are within allowable ranges.  Preventative maintenance as well, changing components after certain times and by the maintenance schedule for that plant."  (U.F. 4.)  Plaintiff was required to use tools including "air operated impact guns, overhead winches and pulleys to lift heavy objects, stepping stools and ladders" and lifting items that weighed up to 30 pounds.  (U.F. 5 ,6.)  He was occasionally required to lift over 45 to 75 pounds with the assistance of a mechanical winch or overhead crane.  (U.F. 8.)  Typically, his job involved one to two hours per day for computer and administrative duties, while the rest of his time involved standing (other than when driving).[8]  (U.F. 11.)

Here, Dr. Bianchi restricted Plaintiff to sedentary duty only with minimal use of his left arm.  Although Plaintiff argues that Defendant did not contact Dr. Bianchi to determine what sedentary duty meant, Plaintiff cites to no legal authority that contacting Plaintiff's physician was required.  A limitation to sedentary work is not ambiguous and Plaintiff himself testified that his doctor told him that it would limit him to not participating in high physical activity, just sitting in one spot and walking.  (Garcia Decl. 131:2-11.)  Since the limitations opined by Dr. Bianchi were

[7] Plaintiff objects to this evidence citing the deposition testimony of Jason Lucas that Plaintiff was unable to work due to an inability to drive.  (ECF No. 18-3 at 3-4.)  Plaintiff relies on testimony about an email string from May 2017.  (Video Conference Depo. of Jason R. Lucas ("Lucas Depo."), Exhibit F.)  In this email string, Mr. Lucas states that he does not feel that Plaintiff's restrictions can be accommodated because he needs to be able to drive into work as normal when something goes wrong at the plant.  (Id.)  However, Mr. Breinlinger responded that they have accommodated the driving aspect in the past, and they "could conceivably permit no lifting or climbing, but sedentary work does not exist in a Standard Plant."  (Id.)  Plaintiff cites to Mr. Lucas' testimony regarding his concerns as to Plaintiff's medication and its effect on his ability to drive.  (Lucas Depo 54:21-58:12.)  Plaintiff also cites to his deposition testimony regarding his understanding of sedentary, just sitting in one spot and walking.  (Garcia Decl. 131:2-11.)  Plaintiff's objection is overruled.

[8] "The essential functions of a position are 'the fundamental job duties of the employment position the individual with a disability holds or desires.'  FEHA lists the evidence that may be considered in determining the essential functions of a job.  This 'includes, but is not limited to . . . [t]he employer's judgment as to which functions are essential . . . [and w]ritten job descriptions prepared before advertising or interviewing applicants for the job."  Furtado v. State Pers. Bd., 212 Cal.App.4th 729, 743 (2013) (quoting Cal. Gov't Code § 12926(f)).  At the December 18, 2019 hearing, the parties confirmed that for the purposes of this motion, the duties are the essential functions of Plaintiff's job.

clear on their face, Defendant did not have an obligation to contact Dr. Bianchi for further clarification. McNeil v. Union Pac. R.R. Co., 936 F.3d 786, 791 (8th Cir. 2019); cf. Roberts v. Kaiser Found. Hosp., No. 2:12-CV-2506-CKD, 2015 WL 545999, at *13 (E.D. Cal. Feb. 10, 2015), aff'd sub nom. Roberts v. Permanente Med. Grp., Inc., 690 F. App'x 535 (9th Cir. 2017) (employer reasonably engaged in interactive process by reaching out to doctor where notes provided no functional limitations); Nadaf-Rahrov, 166 Cal.App.4th at 987 (in some cases it may be reasonable for the employer to affirmatively "seek out a medical release or at least to clarify for the employee exactly what is required before the employee can be reassigned to a new position"). Plaintiff's leave of absence of continued. (Angelovski Decl. ¶ 10.)

On June 13, 2017, Dr. Bianchi returned Plaintiff to safe transitional work with light duty left arm and no work at heights through July 25, 2017. (ECF No. 18-1 at 28.) However, Plaintiff was sent for inpatient neurological rehabilitation treatment from June 21, 2017 to July 20, 2017 so he was unavailable to report to work. (Angelovski Decl. ¶ 10; Decl. of Anthony S. Bianchi, M.D. ("Bianchi Decl.") ¶ 5.)

Around July 25, 2017, Dr. Bianchi released Plaintiff for "safe transitional work" through September 5, 2017 and required light duty with no work at heights. (U.F. 25.) Dr. Bianchi recommended outpatient treatment for Plaintiff from July 24, 2017 through August 31, 2017. (U.F. 25.)

After not hearing from Plaintiff and learning that he had not responded to other attempts to contact him, Ms. Angelovski sent a letter to Plaintiff on August 29, 2017.[9] (Angelovski Decl. 12.) The letter stated in relevant part:

> As of today, the Company has not heard back from you on whether or not you are able to return to work and perform the essential functions of your job, with or without reasonable accommodation. Based on this information, you will be separated from employment effective August 30, 2017 unless you provide us with

---

[9] Plaintiff objects to this fact stating it is irrelevant since Dr. Bianchi was sending regular updates on Plaintiff's status. However, Plaintiff had been receiving inpatient treatment and since Dr. Bianchi released Plaintiff for safe transitional work at the end of July, it is reasonable that Defendant would have received some type of update as to Plaintiff's status such as that he had been released from the hospital, was he participating in outpatient treatment, and was he available to work. The fact that Plaintiff was not responding to requests is relevant as to whether he was engaging in the interactive process. Swanson v. Morongo Unified Sch. Dist., 232 Cal.App.4th 954, 972 (2014). Plaintiff's objection on the ground of relevancy is overruled.

information by September 8, 2017 demonstrating that you are able to return to work and perform the essential functions of your position (with or without reasonable accommodation) and/or will be able to do so in the foreseeable future.

(ECF No. 14-4 at 23.) A few days later, Ms. Angelovski spoke with Plaintiff by phone explaining to him the information that was needed and Plaintiff was provided with a proposed timeline to provide the information.[10] (Angelovski Decl. ¶ 13.)

On September 5, 2017, Dr. Bianchi issued a work status form stating that Plaintiff could do safe transitional work with a forty-pound limit for lifting, no work at heights, and moderate use of his left arm through October 17, 2017. (ECF No. 18-1 at 30.) Upon receipt of Dr. Bianchi's note, Ms. Angelovski and other representatives of Defendant commenced discussions on whether Plaintiff's restrictions could be accommodated. (Angelovski Decl. ¶ 15.) Due to concerns regarding what would constitute "safe transitional work", whether Plaintiff's medications would impact his ability to drive and operate machinery, and whether "no work at heights" would mean zero or allow Plaintiff to work at heights of one to two feet, authority was obtained from Plaintiff for Dr. Bianchi to be contacted. (Id. ¶ 15.)

Around September 26, 2017, Plaintiff's physician clarified the July 2017 note indicating that Plaintiff could work at five feet for now and was to advance, that Plaintiff was able to drive both personally and commercially, and that his medication would not significantly affect his ability to perform his regular customary duties. (U.F. 27.) After receiving this clarification, Ms. Angelovski and other representatives of Defendant again discussed whether Defendant could accommodate the restrictions opined by Dr. Bianchi. (Angelovski Decl. ¶ 17.) They determined that Defendant could accommodate the restrictions and a return to work examination was scheduled for October 10, 2017. (Id.) Plaintiff was anticipated to return to work on that same date upon confirmation of his restrictions. (Id.)

Due to some confusion by the doctor, Plaintiff's examination on October 10, 2017 did not

---

[10] Plaintiff objects on the grounds of relevance. The Court finds that the fact that Ms. Angelovski contacted Plaintiff by telephone to explain the process to him is relevant to Defendant's efforts to participate in the interactive process. Plaintiff's objection on this ground is overruled.

occur and it was rescheduled for October 17, 2017.[11]  (Id.)  On October 17, 2017, Dr. Bianchi completed a work status report stating Plaintiff could perform safe transitional work, lifting 40 pounds, no work at more than five feet, and with moderate use of his left arm through November 28, 2017.  (ECF No. 18-1 at 31.)  On this same date, Plaintiff told Mr. Fog that there was a possibility that he would be checking back into a patient rehabilitation facility.  (Garcia Depo. 158:23-159:2.)  Plaintiff told Mr. Fogg that if he did it would be on an outpatient basis and that he would be going two days a week.  (Id. 159:12-21.)

Defendant then determined that Plaintiff's leave of absence would be indefinite and made the decision to terminate him unless he received documentation from his physician that he could return to work and perform the essential functions of his position with or without reasonable accommodation and would be able to do so in the foreseeable future.  (Angelovski Decl. ¶ 19; Angelovski Depo 177:10-18; ECF No. 14-4 at 29.)  Plaintiff did not provide a response. Angelovski Decl. ¶ 19.)

Defendant has met its burden of presenting evidence to demonstrate that there are no genuine issues of material fact that Plaintiff's disability was reasonably accommodated.  Celotex Corp., 477 U.S. at 322.  Therefore, the burden shifts to Plaintiff to show that a genuine issue of material fact exists to defeat summary judgment.  Matsushita Elec. Indus. Co., 475 U.S. at 586.

Plaintiff raises four reasons that Defendant's motion cannot prevail.  First, Plaintiff contends that a reasonable accommodation was never refused.  (ECF No. 18 at 8.)  Defendant has presented no evidence that a reasonable accommodation was offered to Plaintiff and he refused to accept it.  Jensen, 85 Cal.App.4th at 263.

Second, Plaintiff argues that Defendant did nothing to explore alternative work positions for Plaintiff.  "[A]n employer can prevail on summary judgment on a claim of failure to reasonably accommodate by establishing through undisputed facts that there simply was no

---

[11] Plaintiff disputes this fact, but he provides no evidence that would contradict the fact that the refusal to see him was due to confusion on the part of the doctor.  In his deposition Plaintiff testified that he was informed by Mr. Fog that Defendant just needed the medical examination and if there were no other restrictions he would be returned to work. (Garcia Depo. at 157:5-17.)  Plaintiff stated that according to the doctor he had to be fully released to return to work by Dr. Bianchi.  (Garcia Decl. ¶ 8.)  However, the doctor's statement that Plaintiff needed to be released by Dr. Bianchi does not contradict Defendant's evidence that the doctor misunderstood the purpose of the evaluation. Plaintiff also states that he was never informed that the doctor's visit had been rescheduled.  (Garcia Decl. ¶ 8.)

vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation." Nealy, 234 Cal.App.4th at 378 (internal quotation marks and citation omitted). Here, although Defendant has presented evidence that there was only one Praxair employee that worked at the plant, (U.F. 2), there is no evidence as to whether there were other positions that might have been available within the organization or as to Plaintiff's qualifications to perform any such other positions. Defendant has not met its burden to demonstrate that there were no vacant positions within the organization for which Plaintiff was qualified and that he was capable of performing with or without an accommodation. Jensen, 85 Cal.App.4th at 263. A genuine dispute of material fact exists as to whether there were other positions available within the organization that Plaintiff could have performed with his limitations.

Third, Plaintiff argues that Defendant continued his leave after Dr. Bianchi opined that he could return to work with restrictions instead of engaging in the interactive process to pursue other forms of accommodation. Plaintiff cites to the September 5, 2017 and the October 17, 2017 work status reports. During this time period, Plaintiff was continued on leave while Defendant contacted his employer to clarify the limitations opined and to schedule a return to work physical to determine if he could perform the essential functions of his position. "[U]nder California law, '[w]hen an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence.'" Wallace v. Cty. of Stanislaus, 245 Cal.App.4th 109, 134 (2016) (quoting Cal. Code Regs., tit. 2, § 11068(c)). Although Defendant presents evidence that it had been determined that Plaintiff's limitations could be accommodated with the limitations opined in the September 2017 report, a reasonable trier of fact could find that it was not reasonable for Plaintiff to be kept on leave from the time he was released to limited duty until October 7, 2017 for Defendant to receive further clarification of his work limitations from a third party doctor, especially given that Defendant has not provided any evidence that there were no other positions within the organization that would accommodate Plaintiff's limitations.

Further, although Plaintiff notified Defendant that he might be going to outpatient therapy,

Plaintiff was not returned to work due to the confusion with the second opinion of the company's doctor. Defendant argues that receiving a second opinion from the company doctor became moot because Plaintiff's limitations had changed due to the notification that he would be receiving further outpatient therapy. A reasonable trier of fact could find that Plaintiff should have been returned to work while waiting for his outpatient therapy to begin since Defendant had determined that it was able to accommodate Plaintiff's limitations.

Fourth, Plaintiff argues Defendant should have extended his leave as a reasonable accommodation when it learned that he was attending a thirty-day outpatient program. While a finite leave of absence may be a reasonable accommodation where it is likely that the employee can recover so he can perform his duties, Hanson v. Lucky Stores, Inc., 74 Cal.App.4th 215, 226 (1999), the FEHA does not require the employer to provide an indefinite leave of absence for a medical condition to be corrected, Hanson, 74 Cal.App.4th at 226-27; Nealy, 234 Cal.App.4th at 377-78. Defendant states that it was determined that Plaintiff's leave of absence was indefinite, but Plaintiff argues that he was able to work while in the outpatient program and even if Defendant could not accommodate a two day a week absence, the program was only for thirty days and an extension of his leave of absence would be a reasonable accommodation.

A genuine dispute of fact exists as to whether Defendant failed to offer a reasonable accommodation after being informed that Plaintiff may be attending outpatient therapy. While Defendant argues that this change in his status required further documentation that he was able to perform the essential functions of his job, Defendant had determined that Plaintiff could return to work if his work restrictions were verified by its appointed physician. Defendant argues that Plaintiff had the ability to clear up any misunderstanding that existed about his upcoming therapy. But Plaintiff's physical limitations were improving based on the reports that Defendant had received, and Plaintiff presents evidence that he informed Defendant that while he might be entering a thirty-day outpatient program, he would be attending two days a week which would allow him to return to work. (Garcia Decl. ¶ 10.) Defendant presents no evidence as to why Plaintiff's participation in outpatient therapy two days a week would preclude him from performing the essential functions of his job or if it considered whether it could accommodate

such a limitation prior to determining that Plaintiff's leave was indeterminate.

Further, there is no evidence addressing why Plaintiff was not returned to work pending his return to outpatient therapy. While Defendant sought further clarification on Plaintiff's limitations, a reasonable trier of fact could find that seeking such clarification was unnecessary given that Plaintiff provided a work release on October 18, 2017, Plaintiff's physical limitations had improved, Defendant did not consider whether it could accommodate Plaintiff by allowing him to attend out patient treatment two days per week for thirty days, and a thirty day extension of his leave would be a reasonable accommodation to allow Plaintiff to participate in the outpatient treatment.[12]

Finally, Defendant argues that Plaintiff did not respond to the letter requesting additional information on his ability to perform the essential duties of his job. However, Plaintiff states that he assumed that the letter had crossed in the mail with the information that he had already provided. (Garcia Decl. ¶ 11.) On October 17, 2017, Plaintiff was seen by Dr. Bianchi and sent his work status report to Mr. Fog by email on October 18, 2017. (Garcia Decl. ¶ 8; ECF No. 9 18-2 at 9.)

At the December 18, 2019 hearing, Defendant argued that the information provided by Plaintiff contradicted the work status report that was provided by the doctor. However, there is no indication that Plaintiff's limitations had changed. Defendant had determined that Plaintiff's limitations could be accommodated and the record is devoid of any indication that Defendant considered returning Plaintiff to work pending his outpatient treatment or that Defendant considered whether it could accommodate Plaintiff's outpatient treatment two days a week. Given the question as to the necessity of any further information in the first instance, a genuine issue of material fact exists that precludes summary judgment in this matter.

---

[12] In the reply, Defendant argues that Plaintiff's work conditions changed and that he would be checking into an inpatient facility for another thirty days and that Plaintiff had the opportunity to clear up any misunderstanding to the extent one existed. (ECF No. 19 at 5-6.) The October 27, 2017 letter sent to Plaintiff states that Plaintiff informed his manager that he would be checking into an inpatient facility for thirty days. (ECF No. 14-4 at 29.) However, Plaintiff has presented evidence that he informed his manager that he would be participating in outpatient treatment two days per week. (Garcia Decl. ¶ 10.) This is a factual dispute that should be determined by the trier of fact and cannot be resolved on summary judgment. Further to the extent that Defendant reasonably believed that Plaintiff was checking into an inpatient facility, Defendant has presented no evidence as to why it was determined that Plaintiff's leave was now indeterminate when his treatment was to only be for thirty days.

1   Accordingly, the Court finds that genuine issues of material fact exist and Defendant's

2   motion for summary judgment on the failure to accommodate claim is denied.

3       2.   Failure to Engage in the Interactive Process

4       FEHA provides that it is unlawful for an employer "to fail to engage in a timely, good

5   faith, interactive process with the employee or applicant to determine effective reasonable

6   accommodations, if any, in response to a request for reasonable accommodation by an employee

7   or applicant with a known physical or mental disability or known medical condition."  Cal. Gov't

8   Code § 12940(n).  There is no requirement that the interactive process take any specific, ritualized

9   form.  Kelly v. Wal Mart Stores, Inc., 291 F.Supp.3d 1145, 1150 (S.D. Cal. 2017); Nealy, 234

10  Cal.App.4th at 379.

11      Once the process is initiated, the employer has a continuous obligation to engage in the

12  interactive process in good faith.  Swanson, 232 Cal.App.4th at 971–72.  "[W]hen an employer

13  needs to fill a position and an applicant or employee desires the position, the interactive process is

14  designed to bring the two parties together to speak freely and to determine whether a reasonable,

15  mutually satisfactory accommodation is possible to meet their respective needs."  Gelfo v.

16  Lockheed Martin Corp., 140 Cal.App.4th 34, 62 (2006).  "Each party must participate in good

17  faith, undertake reasonable efforts to communicate its concerns, and make available to the other

18  information which is available, or more accessible, to one party.  Liability hinges on the objective

19  circumstances surrounding the parties' breakdown in communication, and responsibility for the

20  breakdown lies with the party who fails to participate in good faith."  Swanson, 232 Cal.App.4th

21  at 972 (quoting Scotch v. Art Institute of California, 173 Cal.App.4th 986, 1014 (2009)).  "When

22  a claim is brought for failure to reasonably accommodate the claimant's disability, the trial court's

23  ultimate obligation is to 'isolate the cause of the breakdown . . . and then assign responsibility' so

24  that '[l]iability for failure to provide reasonable accommodations ensues only where the employer

25  bears responsibility for the breakdown.' "  Nadaf-Rahrov, 166 Cal.App.4th at 985 (citations

26  omitted).

27      Plaintiff argues that Defendant's decision to terminate him rather than to continue his

28  leave for another month constituted a failure to engage in the interactive process.  (ECF No. 18 at

5-6.) As discussed above, Plaintiff was released for work and Defendant determined that it would be able to accommodate his limitations in October 2017. However, when Plaintiff advised that he might be attending an outpatient treatment program two days a week,[13] Defendant determined that his leave was indefinite and required him to provide documentation that he was able to perform his essential job duties. Defendant argues that Plaintiff never responded to the request. However, Plaintiff's physical limitations were unchanged and Defendant has presented no evidence that it considered whether it could accommodate Plaintiff if he attended outpatient treatment two days per week.

The evidence is conflicting and the issue regarding which party was responsible for the breakdown in the interactive process is factual. While Defendant argues that Plaintiff failed to respond to the request that he demonstrate that he was capable of performing the essential functions of the job, a reasonable juror could find that requesting further information from Plaintiff's doctor was not in good faith given that Plaintiff's physical limitations were unchanged. A genuine issue of material fact exists which precludes summary judgment. Accordingly, Defendant's motion for summary judgment on the failure to engage in the interactive process claim is denied.

3. <u>Termination of Employment</u>

Under FEHA, as relevant here, it is unlawful for an employer to discharge or discriminate against any person because of a physical disability. Cal. Gov't Code § 12940(a). However, FEHA does not prohibit an employer from discharging an employee who is unable to perform the essential job duties even with a reasonable accommodation or who cannot perform the essential job duties in a manner that would not endanger the employee or others. Cal. Gov't Code § 12940(a)(2).

The burden shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802–04 (1973), is used to analyze a claim of disability discrimination. <u>Cornell</u>, 18

---

[13] Defendant submits evidence that Plaintiff participated in the outpatient program four days per week (Garcia Depo. 161:1-12), however Plaintiff submits evidence that he was only required to participate two days per week but participated four days per week as he was available to participate more days due to his employment being terminated (Garcia Decl. ¶ 12).

Cal.App.5th at 926; <u>Lawler v. Montblanc N. Am., LLC</u>, 704 F.3d 1235, 1242 (9th Cir. 2013). However, when an employer moves for summary judgment the burden is reversed and the employer is required to show that the plaintiff cannot establish one of the elements of the FEHA claim or that there was a legitimate nondiscriminatory reason for the decision to terminate the plaintiff. <u>Cornell</u>, 18 Cal.App.5th at 926; <u>Lawler</u>, 704 F.3d at 1242. The employee must then show either "that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." <u>Id.</u> In a case where the plaintiff presents direct evidence of disability discrimination, the <u>McDonnell Douglas</u> framework does not apply. <u>Wallace</u>, 245 Cal.App.4th at 123.

To prove a prima facie claim of disability discrimination, Plaintiff must demonstrate that 1) he suffers from a disability; 2) he is a qualified individual; and 3) he was subjected to an adverse employment action because of his disability. <u>Ravel v. Hewlett-Packard Enter., Inc.</u>, 228 F.Supp.3d 1086, 1095 (E.D. Cal. 2017); <u>Jensen</u>, 85 Cal.App.4th at 254. The plaintiff bears the burden of demonstrating that he is able to perform the job with or without reasonable accommodation. <u>Lawler</u>, 704 F.3d at 1243. Because "proof of discriminatory intent often depends on inferences rather than direct evidence, very little evidence of such intent is necessary to defeat summary judgment." <u>Cornell</u>, 18 Cal.App.5th at 935 (internal punctuation and citations omitted).

The Court finds that a triable issue of material fact exists as to whether Defendant discriminated against Plaintiff by terminating him after determining that Plaintiff's limitations could be accommodated. An appointment was scheduled with a physician on October 7, 2017 to verify Plaintiff's limitations, but despite the fact that the doctor had previously refused to see Plaintiff in May or June of 2017 when referred for the same reason, Defendant did not clarify with the doctor prior to the October appointment the purpose of the examination. Again, the doctor refused to see Plaintiff to verify his physical limitations.

Further, after making this determination that Plaintiff's limitations could be accommodated, Defendant determined that Plaintiff's leave of absence was indeterminate. Although Defendant argues that Plaintiff's limitations again changed, viewing the evidence in the

light most favorable to Plaintiff, his physical limitations remained the same and Plaintiff informed his supervisor that he would be attending outpatient treatment two days per week. Plaintiff has submitted evidence that he would only be required to attend outpatient treatment two days per week during the thirty-day program leaving him available to work.

Finally, although Defendant found Plaintiff's leave was indeterminate, the outpatient program was for a thirty-day period and Plaintiff has submitted evidence that throughout treatment and at the end of that period he remained available to work with the same restrictions as of December 1, 2017. (ECF No. 18-1 at 33, 34.) Plaintiff has presented evidence by which a reasonable trier of fact could find that his leave was not indeterminate. Therefore, Plaintiff has demonstrated that a genuine issue of material fact exists to preclude summary judgment. Defendant's motion for summary judgment on the employment discrimination claim is denied.

### B. Wrongful Termination in Violation of Public Policy

Plaintiff's disability discrimination claim can trigger a common law claim for wrongful termination. Kelly, 291 F.Supp.3d at 1153 . Plaintiff's failure to accommodate, failure to engage in the interactive process, and disability discrimination claim based on his termination of employment remain. Thus, to the extent Plaintiff's claim for wrongful termination in violation of public policy is grounded in these claims, such claim survives. See Rezvan v. Philips Elecs. N. Am. Corp., No. 15-CV-04767-HSG, 2016 WL 8193160, at *8 (N.D. Cal. Dec. 15, 2016) ("Since summary judgment must be denied on Plaintiff's underlying FEHA disability discrimination claim, so too must it be denied on her" wrongful termination in violation of public policy claim.); Kelley v. Corr. Corp. of Am., 750 F.Supp.2d 1132, 1145 (E.D. Cal. 2010) ("Since Plaintiff's claims for failure to accommodate and failure to engage in the interactive process have survived Defendant's motion to dismiss, the court finds that dismissal of Plaintiff's wrongful termination claim is not warranted."); Diego v. Pilgrim United Church of Christ, 231 Cal.App.4th 913, 926 (2014) (quoting Grant–Burton v. Covenant Care, Inc., 99 Cal.App.4th 1361, 1372 (2002) ("[T]ermination of an employee most clearly violates public policy when it contravenes the provision of a statute forbidding termination for a specified reason.").

Accordingly, Defendant's motion for summary judgment on the wrongful termination

claim in violation of public policy is denied.

## VI.

## CONCLUSION AND ORDER

The Court finds that genuine of issues of material fact exist as to whether Defendant failed to accommodate Plaintiff's limitations due to his disability, failed to engage in the interactive process, and terminated Plaintiff because of his disability. Since these claims remain, Plaintiff's claim for wrongful termination in violation of public policy also survives summary judgment.

Accordingly, Defendant's motion for partial summary judgment is HEREBY DENIED.

IT IS SO ORDERED.

Dated:   **December 20, 2019**

UNITED STATES MAGISTRATE JUDGE