1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK GARCIA, | Case No.  1:18-cv-01493-SAB |
| Plaintiff, | ORDER RE MOTIONS *IN LIMINE* |
| v. | (ECF Nos. 52, 53, 54, 55) |
| PRAXAIR, INC., | |
| Defendant. | |

## I.

## BACKGROUND

Patrick Garcia ("Plaintiff") was employed by Praxair, Inc. ("Praxair" or "Defendant") as a standard plant technician at Defendant's Chowchilla plant.  On February 6, 2017, Plaintiff was repairing a value and was injured as a result of a fall.  He was hospitalized for approximately three days with a traumatic brain injury that required further treatment.  Plaintiff was placed on disability and was terminated on November 7, 2017.

Plaintiff filed this action pursuant to 28 U.S.C. § 1332(a) on October 29, 2018, against Defendant alleging disability discrimination for termination of employment, Cal. Gov. Code § 12940(a); failure to accommodate, Cal. Gov. Code § 12940(m); failure to engage in the interactive process, Cal. Gov. Code § 12940(n); wrongful termination in violation of public policy; retaliation in violation of Cal. Lab. Code §§ 6310, 1102.5; failure to pay overtime wages in violation of Cal. Lab. Code § 510(a); and failure to pay wages earned in violation of Cal. Lab. Code § 201.  A trial is to be set once jury trials are able to resume in this district.  Currently

1  before the Court are the parties' motions *in limine* filed on November 25, 2020.  (ECF No. 52,

2  53.)  Oppositions to the motions *in limine* were filed on December 9, 2020.  (ECF Nos. 54, 55.)

3       Oral argument on the motions was held on December 16, 2020.  Counsel Tom Duckworth

4  and Dena Narbaitz appeared for Plaintiff.  Counsel Tanja Darrow and Vanessa Cohn appeared for

5  Defendant.  Having considered the moving and opposition papers, the declarations and exhibits

6  attached thereto, arguments presented at the December 16, 2020 hearing, as well as the Court's

7  file, the Court issues the following order.

8  **II.**

9  **LEGAL STANDARD**

10       "A motion *in limine* is a procedural mechanism to limit in advance testimony or evidence

11  in a particular area."  United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009).  A party may

12  use a motion *in limine* to exclude inadmissible or prejudicial evidence before it is actually

13  introduced at trial.  See Luce v. United States, 469 U.S. 38, 40 n.2 (1984).  "[A] motion *in limine*

14  is an important tool available to the trial judge to ensure the expeditious and evenhanded

15  management of the trial proceedings."  Jonasson v. Lutheran Child and Family Services, 115 F.3d

16  436,440 (7th Cir. 1997).  A motion *in limine* allows the parties to resolve evidentiary disputes

17  before trial and avoids potentially prejudicial evidence being presented in front of the jury,

18  thereby relieving the trial judge from the formidable task of neutralizing the taint of prejudicial

19  evidence.  Brodit v. Cambra, 350 F.3d 985, 1004-05 (9th Cir. 2003).

20       Judges have broad discretion in ruling on a motion *in limine*.  Jenkins v. Chrysler Motors

21  Corp., 316 F.3d 663, 664 (7th Cir. 2002) );  see also United States v. Torres, 794 F.3d 1053, 1059

22  (9th Cir. 2015) (motion *in limine* rulings are reviewed for abuse of discretion).  Evidence should

23  not be excluded on a motion *in limine* unless it is inadmissible on all potential grounds.

24  McConnell v. Wal-Mart Stores, Inc., 995 F.Supp.2d 1164, 1167 (D. Nev. 2014); United States v.

25  Hitesman, No. 14-CR-00010-LHK-1, 2016 WL 3523854, at *2 (N.D. Cal. June 28, 2016).  Unless

26  this high standard is met, ruling on the motion *in limine* should be denied until trial so that the

27  evidence can be considered in its proper context.  McConnell, 995 F.Supp.2d at 1167; Hitesman,

28  2016 WL 3523854, at *2; see also Jonasson, 115 F.3d at 440 (Some evidentiary issues are not

accurately and efficiently evaluated by the trial judge in a motion *in limine* and it is necessary to defer ruling until during trial).

**III.**

**DISCUSSION**

Plaintiff brings motions *in limine* to 1) exclude evidence of the affirmative defense of undue hardship; 2) exclude evidence from medical providers on Plaintiff's ability to return to work; 3) exclude evidence of whether he was totally temporarily disabled; 4) exclude evidence of Defendant's rebuttal expert; 5) exclude Mr. Sarkisian as a rebuttal expert; and 6) exclude evidence of collateral source payments.  Defendant brings motions *in limine* to 1) exclude expert testimony from Mr. Lloyd; 2) exclude evidence relating to a Cal-OSHA investigation and subsequent OSHA findings and subsequent remediation; 3) exclude testimony from Mr. Gonzales; 4) exclude testimony from Ms. Goins-Gonzales; 5) exclude declarations of Mr. Gonzales, Ms. Goins-Gonzales, Dr. Bianchi; and Dr. Chauhan; 6) preclude Plaintiff from admitting his medical records and work restriction notices to establish his medical condition and work restrictions; 7) exclude evidence of workers' compensation third party administrator's denial of treatment or delay in approving treatment; 8) exclude drafts of letters to Plaintiff; 9) and exclude evidence of potential job openings with Defendant.

The Federal Rules of Civil Procedure provide that generally relevant evidence is admissible at trial.  Fed. R. Evid. 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

    **A.**    **Plaintiff's Motions *In Limine***

    1.    <u>Evidence of Affirmative Defense of Undue Hardship</u>

    **a.**    **Plaintiff's Position**

Plaintiff's first motion *in limine* seeks to have Defendant refrain making any mention,

directly or indirectly, of any evidence concerning Defendant's undue hardship defense that was not produced in response to discovery requests.  Plaintiff contends that Defendant was required to disclose all documents that it had in its possession custody and control and did not produce any documents going to the affirmative defense of undue hardship in its initial disclosures.  Further, Plaintiff alleges that Defendant did not produce any documents in response to discovery requests concerning the undue hardship defense.  Plaintiff argues that under Rule 37(c) of the Federal Rules of Evidence, Defendant should be precluded from introducing documents that were not produced in discovery or in the Rule 26 disclosures.  Plaintiff contends that admission of such documents would be inadmissible hearsay and unduly prejudicial under Rules 403 and 802 of the Federal Code of Evidence.

### b.      Defendant's Position

Defendant counters that Plaintiff is incorrect and evidence relevant to the undue hardship defense was produced in the initial and supplemental disclosures, discovery responses, supplemental responses, and corresponding document production, as well as the deposition testimony of the lay, expert, and rebuttal expert witnesses that were deposed in this action. Defendant asserts that evidence need not be labeled as "undue burden defense" and that there is no merit to Plaintiff's assertion that no evidence has been produced and requests that the motion be denied.

### c.      The Court's Ruling

The California Civil Jury Instructions provide that to succeed on the affirmative defense of undue hardship defense, a defendant must prove that an accommodation would create an undue hardship because it would be significantly difficult or expensive, in light of the following factors:

a.      The nature and cost of the accommodation[s];
b.      [Name of defendant]'s ability to pay for the accommodation[s];
c.      The type of operations conducted at the facility;
d.      The impact on the operations of the facility;
e.      The number of [name of defendant]'s employees and the relationship of the employees' duties to one another;
f.      The number, type, and location of [name of defendant]'s facilities; and
g.      The administrative and financial relationship of the facilities to one another.

CACI 2545; <u>see</u> <u>also</u> Cal. Gov't Code § 12926(u).  Further, the notes on directions for use state

1  that "[t]he issue of whether undue hardship is a true affirmative defense or whether the defendant
2  only has the burden of coming forward with the evidence of hardship as a way of negating the
3  element of plaintiff's case concerning the reasonableness of an accommodation appears to be
4  unclear." Id. citing Atkins v. City of Los Angeles, 8 Cal.App.5th 696, 733 (2017). "Whether a
5  particular accommodation will impose an undue hardship for a particular employer is determined
6  on a case by case basis" and "is a multi-faceted, fact-intensive inquiry." Atkins, 8 Cal.App.5th at
7  733 (internal citations omitted).

8        Here, Plaintiff has not identified any specific evidence that is sought to be excluded but
9  generally seeks to exclude all mention of evidence that has not been produced relevant to the
10  undue hardship defense because Defendant did not produce documents in response to request for
11  production no. 50 for "[a]ll DOCUMENTS REFERRING OR RELATING to YOUR twenty-
12  second affirmative defense in YOUR answer stating that "any accommodation suggested or
13  requested by Plaintiff (if any there was) ... amounted to an undue hardship to Defendant."
14  (Defendant's Response to Plaintiff's Third Request for Production of Documents Pursuant to
15  FRCP 34, ECF No. 52-1 at 7.)

16        Defendant argues that it produced over 1600 pages of documentation that spoke to the
17  defense of undue hardship which included documents relating to Plaintiff's medical and work
18  status reports, and included documentation on Plaintiff's fluctuating work status and limitations.
19  Defendant also argues that the supplemental discovery responses included additional production
20  that were highly probative of Plaintiff's medical leave and its indeterminate nature. Defendant
21  also cites deposition testimony that would support the undue hardship defense, including that
22  Plaintiff was the only employee that worked at the Chowchilla plant, and that Isaiah Gonzales had
23  to drive several hours to the Chowchilla Plant to cover Plaintiff's shifts and that he was the only
24  technician available to cover. (Depo. of Isaiah Gonzales ("Gonzales Depo."), 33:16-34:23.)
25  Defendant has also provided deposition testimony that when Plaintiff was unavailable backup
26  technicians from Vernon, Mohave, or Bakersfield would respond to issues at Chowchilla. (Depo.
27  of Steven Fogg, 63:2-64:7.) Defendant also points to the deposition testimony of Plaintiff's
28  medical provider that Plaintiff was physically not able to work based on his injury. (Depo. of Dr.

1   Sanjay Chauhan, M.D. ("Chauhan Depo."), 19:9-15.)

2        Plaintiff seeks a sanction under Rule 37 of the Federal Rules of Evidence precluding

3   Defendant from offering any documents that were not produced in discovery as to the defense of

4   undue hardship.   Rule 37 provides that "[i]f a party fails to provide information or identify a

5   witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

6   witness to supply evidence . . . at a trial, unless the failure was substantially justified or is

7   harmless. Fed. R. Civ. P. 37(c).   "The party facing sanctions bears the burden of proving that its

8   failure to disclose the required information was substantially justified or harmless." R & R Sails,

9   Inc. v. Ins. Co. of Pa., 673 F.3d 1240, 1246 (9th Cir. 2012).   "In determining whether to preclude

10  introduction of evidence pursuant to Federal Rule of Civil Procedure 37, courts consider (1) the

11  surprise to the party against whom the evidence would be offered; (2) the ability of that party to

12  cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the

13  importance of the evidence; and (5) the nondisclosing party's explanation for its failure to

14  disclose the evidence." Dey, L.P. v. Ivax Pharms., Inc., 233 F.R.D. 567, 571 (C.D. Cal. 2005).

15  Here, Defendant has not argued that it should be able to present evidence that was not produced

16  during discovery, but argues that there was evidence that was produced that goes to the defense of

17  undue hardship.   Plaintiff's motion is granted to the extent that it seeks to preclude Defendant

18  from introducing any documents that were not produced in discovery in this matter.   Fed. R. Civ.

19  P.. 37(c).

20       Although the motion in limine seeks only to exclude documents that were not produced in

21  discovery, Defendant responds to the motion as if seeking to exclude the undue hardship defense.

22  At the December 16, 2020 hearing, Plaintiff did argue that Defendant should be precluded from

23  raising an undue hardship defense due to the failure to produce financial evidence or documents

24  to support the defense.   Defendant argued that evidence of financial burden was produced during

25  through the deposition testimony that was taken during the course of discovery.   To the extent that

26  Plaintiff alleges that financial evidence was not produced, the Court finds that whether the

27  evidence is sufficient to raise to an undue burden is for the jury and Plaintiff is free to make an

28  argument to the jury on the scarcity of the evidence.   Further, should Defendant fail to present

1  evidence to meet the affirmative defense of undue hardship, Plaintiff can raise the issue and it can

2  be addressed by the jury instructions.

3         Although Defendant did not identify any documents in response to Plaintiff's request for

4  production of documents that specifically relate to the undue hardship defense, the Court agrees

5  with Defendant that the failure to do so would be harmless in the situation presented here.

6  Plaintiff requested that Defendant produce all documents relating to the affirmative defense that

7  the accommodation amounted to an undue hardship.  (ECF No. 52-1 at 7.)  Defendant objected

8  and did not produce or identify any documents that had already been produced.  (Id.)  However,

9  the propounding party is entitled to individualized, complete responses to each request for

10 production, "as numbered and identified in the requests, accompanied by production of each of

11 the documents responsive to the request, regardless of whether the documents have already been

12 produced."  Louen v. Twedt, 236 F.R.D. 502, 505 (E.D. Cal. 2006).  Accordingly to the extent

13 that documents had already been produced that were responsive to the request, Defendant should

14 have identified those documents and produced them.

15        In this instance, Plaintiff was aware of the affirmative defense and Defendant's theory that

16 it would be an undue hardship to continue to accommodate Plaintiff due to the indeterminate

17 length of his medical leave and the fact that he was the only employee at the Chowchilla facility.

18 Therefore, Plaintiff cannot claim to be surprised by the defense given the documents and other

19 discovery that had already been produced.  Further, this not a situation where the defendant stated

20 that there were no responsive documents and is now seeking to introduce responsive documents at

21 trial.  Defendant objected to the request for production and Plaintiff could have brought a motion

22 to compel as Plaintiff was aware that Defendant was asserting the defense of undue hardship.

23        Plaintiff was entitled to an individualized, complete response to the request, accompanied

24 by production of each of the documents responsive to the request, regardless of whether the

25 documents have already been produced.  The failure to disclose the specific documents can be

26 cured by requiring Defendant to supplement its response and identify those documents that have

27 been produced in discovery that are responsive to the request for production.  Allowing this

28 further response will not disrupt trial as no trial date has yet been set.  The importance of the

1   allowing evidence of the affirmative defense weighs heavily against precluding the evidence.
2   Here, Defendant contends that Plaintiff was terminated because it would have been an undue
3   hardship to continue to accommodate due to the indeterminate length of Plaintiff's medical leave.
4   Completely precluding such a defense in the situation here would essentially be determinative in
5   the action.  See R & R Sails, Inc., 673 F.3d at 1247 (court should consider lesser sanctions where
6   imposition of the sanction would be dispositive in the action).  There is no evidence that the
7   failure to identify those documents that had already been produced during discovery involved
8   willfulness, fault, or bad faith.  Id.  Considering these factors, the Court finds that Defendant has
9   demonstrated that the failure to identify responsive documents was harmless.  To remedy the
10  error, the Court shall require Defendant to supplement the response to request for production no.
11  50 to identify and produce those documents that are responsive to the request **that have**
12  **previously been produced in discovery**.

13        To the extent that Plaintiff seeks an order to preclude Defendant from introducing any
14  evidence that would go to the undue hardship defense, evidence that would go to the defense of
15  due hardship could be relevant for other purposes in this action.  Plaintiff has failed to
16  demonstrate that evidence that would go to the undue hardship defense would be inadmissible on
17  all potential grounds.  McConnell, 995 F.Supp.2d at 1167; Hitesman, 2016 WL 3523854, at *2.

18        Plaintiff's first motion *in limine* to preclude evidence of Defendant's affirmative defense
19  of undue hardship is granted in part.  Defendant shall supplement the response to request for
20  production no. 50 identifying those responsive documents that were produced during discovery
21  and Defendant is precluded from introducing documents that were not produced during discovery
22  at the trial of this matter.

23        2.   Evidence from Medical Providers on Plaintiff's Ability to Return to Work

24        **a.   Plaintiff's Position**

25        Plaintiff's second motion *in limine* seeks to preclude testimony from Drs. Vaughn and
26  Chauhan, who did not examine him prior to November 7, 2017.  Plaintiff contends that the
27  examinations, conducted months after he was terminated, could not have been relied on in making
28  the decision to terminate Plaintiff and are irrelevant both to the issue of whether termination was

1  proper and to the issue of damages.  Plaintiff asserts that any purported relevance is substantially

2  outweighed by the prejudice it would cause by misleading the jury or creating juror confusion.

3       Plaintiff also contends that Praxair never identified Drs. Vaughn or Chauhan as expert

4  witnesses and their testimony and records cannot be used at trial.  Plaintiff argues that allowing

5  Defendant to present such undisclosed testimony at trial would be harmful to him.

6       **b.    Defendant's Position**

7       Defendant counters that Plaintiff seeks to have his cake and eat it too by contending that

8  Defendant improperly terminated him because his leave was indeterminate and then seeking to

9  preclude evidence that of his treatment, including full-time inpatient treatment, for the months and

10  years after his termination.  Defendant argues that there is no doubt that this evidence was

11  relevant as Plaintiff continued to suffer from the effects of his traumatic brain injury and Plaintiff

12  himself is seeking to introduce testimony from Dr. Chauhan.  Further, Defendant argues that

13  Plaintiff seeks to preclude the testimony of his treatment after he was terminated while at the

14  same time seeking to introduce treatment he received from Dr. Isono that was provided after Drs.

15  Vaughn and Chauhan treated him.

16       Defendant asserts that testimony from Drs. Vaughn and Chauhan is admissible because

17  they are not retained experts and no reports were required from them.  Further, Defendant

18  contends that Drs Chauhan was properly identified as a rebuttal expert and Plaintiff designated

19  Dr. Chauhan as a non-retained expert.  Defendant further argues that the supplemental disclosure

20  statement on July 20, 2020 specifically identified Drs. Vaughn and Chauhan as Plaintiff's

21  treatment providers and provided a summary as to the relevant information of which they were

22  knowledgeable.

23       **c.    The Court's Ruling**

       i.    <u>Relevancy</u>

24       Plaintiff argues that the testimony from physicians who provided treatment after he was

25  terminated is irrelevant in this action.  The Federal Rules of Civil Procedure provide that

26  generally relevant evidence is admissible at trial.  Fed. R. Evid. 402.  "Evidence is relevant if: (a)

27  it has any tendency to make a fact more or less probable than it would be without the evidence;

28

9

1   and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant

2   evidence can be excluded "if its probative value is substantially outweighed by a danger of one or

3   more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

4   wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

5          Here, the jury will be asked to decide whether Defendant properly terminated Plaintiff

6   upon determining that his medical leave was indeterminate.  While Plaintiff argues that evidence

7   of his medical condition after he was terminated is not relevant to the issue of whether his leave

8   was indeterminate, Plaintiff has relied on physician opinion after the fact, based on his medical

9   treatment, to prove that he was able to return to work.  Defendant contends that Plaintiff has

10  indicated that he intends to admit a declaration from Dr. Chauhan and if Plaintiff does so, then

11  Defendant has the right to cross examine Dr. Chauhan on the contents of the declaration.  Further,

12  Drs. Vaughn and Chauhan were timely identified in the supplemental Rule 26 disclosures, both

13  physicians treated Plaintiff during the year following his termination, and may testify as

14  percipient witnesses regarding their treatment of Plaintiff to rebut testimony regarding his ability

15  to work.

16         Plaintiff contends that medical evidence from providers after he was terminated is

17  inadmissible because Defendant did not rely on the evidence in making the decision to terminate

18  Plaintiff.  Plaintiff relies on Garcia-Brower v. Premier Auto. Imports of CA, LLC, 55 Cal.App.5th

19  961 (2020), an action in which the plaintiff alleged she was unlawfully terminated from her

20  position due to failure to disclose a dismissed conviction for misdemeanor grand theft.  The

21  defendants argued that their post-termination comments were properly disregarded as coming

22  after the decision to terminate the plaintiff.  Id. at 971.  The appeals court disagreed.

23         First, the court found that the defendant knew about the prior dismissed conviction and

24  misused the information to terminate the plaintiff.  Id. at 974.  The defendant had credible

25  information in its possession at the time of the termination suggesting the information was

26  incorrect or incomplete but took no steps to investigate the discrepancy prior to terminating the

27  plaintiff.  Id.  The trial court had found that there was no evidence by which the jury could

28  determine that the defendant was aware that the conviction had been expunged until after it

1    terminated the plaintiff.  Id.  The appellate court found that the company was on notice of the

2    discrepancy in the conviction and there was nothing to prevent the defendant from taking more

3    than a weekend to make the decision to terminate the plaintiff.  Id.

4           The court addressed the argument that the defendant's post termination conduct was not

5    admissible in the action considering Avila v. Continental Airlines, Inc., 165 Cal.App.4th 1237

6    (2008), a case in which the plaintiff was discharged for violating the airlines attendance policy.

7    Garcia-Brower, 55 Cal.App.5th at 979.  After being terminated, the employee had presented a

8    note from his physician that his absences were due to hospitalization from acute pancreatitis.  Id.

9    The Avila court held "[e]vidence that a decision maker learned of a plaintiff's disability after

10   deciding to take adverse employment action is not probative of whether the decision maker was

11   aware of the plaintiff's disability when he or she made the decision.  Such evidence is irrelevant

12   to determining whether the decision maker acted from a discriminatory animus."  Garcia-Brower,

13   55 Cal.App.5th at 979.  The court found Avila to be distinguishable because it "did not involve an

14   employer whose managers were aware that conflicting background checks may indicate that the

15   employee's criminal conviction had been dismissed by court order, a circumstance that could

16   have been clarified with an investigation.  In contrast, there was no evidence that the employer in

17   Avila knew about the plaintiff's medical condition, and the employer first suspended the plaintiff

18   before taking its time to decide that he should be discharged."  Garcia-Brower, 55 Cal.App.5th at

19   979.  The court went on to address the post termination evidence.

20          Several federal courts have concluded that posttermination evidence is not per se
            inadmissible or irrelevant in the context of employment discrimination claims.  In
21          appropriate cases, such evidence can support an inference that a termination was
            substantially motivated by an unlawful reason.  "The relevance of post-termination
22          evidence in a Title VII case depends on the nature of the evidence, the purpose for
            which it is offered, and the context in which it arises.  In some circumstances, post-
23          termination data is relevant to the employer's state of mind before termination.

24   Id. at 979–80.  Garcia-Brower does not support Plaintiff's contention that post-termination

25   evidence is per se inadmissible in this action.

26          Here, Defendant was aware that Plaintiff was suffering from a disability due to his

27   traumatic brain injury and was requiring inpatient and outpatient neurological treatment with his

28   physician submitting work status updates that varied within short time periods.  Plaintiff contends

1   that the jury should be precluded from any medical evidence that would support Defendant's

2   finding that his leave was indeterminate because the medical findings were after the termination.

3   But, the extent of Plaintiff's medical disability and whether Defendant reasonably believed that it

4   was indeterminate is highly relevant in this action.   Examinations by medical providers could be

5   relevant to the extent that they are able to provide the jury with evidence as to how Plaintiff's

6   traumatic brain injury affected Plaintiff's ability to work and how long those limitations had been

7   in effect.   Further, Plaintiff's expert made his calculations based on the assumption that Plaintiff

8   would be able to continue working in his position and how the traumatic brain injury affected

9   Plaintiff's ability to work would also be relevant on the issue of damages.   Therefore, the Court

10  finds that the testimony of Drs. Vaughn and Chauhan is relevant is this action.

11        ii.    <u>Failure to disclose</u>

12        Plaintiff argues that the testimony of Drs. Vaughn and Chauhan should be excluded

13  because Defendant failed to designate them as experts.   Defendant counters that Dr. Chauhan was

14  timely identified in its rebuttal expert disclosures by stating it reserved its right to call any

15  retained or non-retained experts identified by Plaintiff.   Defendant contends that since Plaintiff

16  identified Dr. Chauhan in its expert disclosures, this was sufficient to identify Dr. Chauhan as an

17  expert.   Further, Defendant argues that Drs. Vaughn and Chauhan were timely disclosed in its

18  supplemental Rule 26 disclosures along with a summary as to the relevant information as to

19  which they have knowledge.

20        Federal Rule of Civil Procedure 26(a)(2)(D) provides that a party must make its expert

21  witnesses disclosures at the times and in the sequences that the court orders.   Absent other

22  direction from the court, the opposing party is required to disclose a rebuttal expert within thirty

23  days after receiving another party's disclosure.  Fed. R. Civ. P. 26(a)(2)(D)(ii).  Rule 37(c)(1)

24  gives teeth to these requirements by forbidding the use at trial of any information required to be

25  disclosed by Rule 26(a) that is not properly disclosed.  <u>Yeti by Molly, Ltd. v. Deckers Outdoor</u>

26  <u>Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001).  Rule 37(c) does provide that a party may be excused

27  from the failure to disclose where the failure was substantially justified or is harmless.  Fed. R.

28  Civ. P. 37(c)(1).

1    Here, Defendant has not met Rule 26's requirement for expert disclosure. Although

2    rebuttal experts were designated (see Order Denying Without Prejudice Plaintiff's Motion to

3    Strike Defendant's Expert Disclosures, ECF No. 32 at 3), the report did not identify Drs. Vaughn

4    or Chauhan as a retained or non-retained expert nor has Defendant shown that the report

5    requirements were met.

6    Generally, treating physicians are excused from the requirement that they provide a

7    written expert report. Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 819 (9th

8    Cir. 2011). "As a treating physician, [the doctor] may describe what she has seen, describe and

9    explain her diagnosis and the treatment she prescribed . . . without running afoul of the constraints

10   of Rules 26 and 37 of the Federal Rules of Civil Procedure." Bynum v. MVM, Inc., 241 F.R.D.

11   52, 54 (D.D.C. 2007) (quoting Riddick v. Washington Hospital Center, 183 F.R.D. 327, 330

12   (D.D.C.1998)). The Ninth Circuit has held that "a treating physician is only exempt from Rule

13   26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the

14   course of treatment." Goodman, 644 F.3d at 826. But, Rule 26(c) requires a witness who is not

15   required to provide a written report, still must disclose: "(i) the subject matter on which the

16   witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii)

17   a summary of the facts and opinions to which the witness is expected to testify." Here, Defendant

18   has not shown that Rule 26(c) was complied with by providing a disclose of the facts and

19   opinions to which the witness is expected to testify.

20   However, Defendant argues that any failure to disclose the witnesses as experts is

21   harmless given that Defendant's initial discloses stated that it would support its claims and/or

22   defenses through evidence of "[a]ll medical providers . . . from whom Plaintiff alleges he has

23   sought out and/or obtained treatment due to the alleged conduct of the Defendant and/or regarding

24   Plaintiff's disability." (Def. Praxair's Initial Disclosures, ECF No. 55-1 at 7.) Plaintiff

25   subsequently produced records of his medical treatment by Drs. Vaughn and Chauhan and a

26   declaration from Dr. Chauhan which are listed as exhibits in the pretrial order. Defendant's

27   supplemental Rule 26(a)(1) disclosures listed Drs. Vaughn and Chauhan and indicated that they

28   had knowledge of "Plaintiff's medical conditions, restrictions, needed accommodations, and

1  communications with Plaintiff regarding the same." (Def. Praxair, Inc.'s Suppl. Disclosures, ECF

2  No 55-1 at 49.)  Finally, Defendant deposed Dr. Chauhan and an attorney was present for Plaintiff

3  although he did not ask any questions during the deposition.  (See Decl. of Sanjay Chauhan,

4  M.D.)

5       Defendant argues that there is no surprise by allowing Drs. Vaughn and Chauhan to testify

6  to their personal observations and opinions formed while evaluating and treating Plaintiff because

7  Plaintiff has known about his own treatment providers and Defendant's intention to rely on their

8  records and testimony throughout the pendency of this action.  Defendant has shown that Plaintiff

9  has been aware that Defendant was intending to rely on the treatment provided by and the

10 opinions of Drs. Vaughn and Chauhan.  Defendant also informed Plaintiff in the rebuttal expert

11 disclose that it reserved its right to call any retained or non-retained experts identified by Plaintiff

12 so the factor of surprise weighs in favor of allowing their testimony in this action.

13      Since the date of trial has not been set and there will be no disruption of trial, these factors

14 weigh in favor of allowing the testimony.

15      Defendant contends that there is no prejudice to Plaintiff, but Plaintiff argues that the

16 failure to designate experts deprived him of the opportunity to depose the physicians.  However,

17 Defendant did depose Dr. Chauhan and Plaintiff had counsel present during the deposition and

18 had the opportunity to examine him regarding his opinion.  Therefore, the Court finds that the

19 issue of prejudice also weighs in favor of allowing Dr. Chauhan to testify as an expert in this

20 matter.  However, Defendant has not presented any evidence that a deposition of Dr. Vaughn was

21 conducted, and the factor of prejudice weighs heavily in favor of granting the motion to preclude

22 his testimony as an expert.  Accordingly, the Court finds that the factors weigh in favor of

23 denying the motion as to Dr. Chauhan and granting the motion as to Dr. Vaughn.

24      A treating physician may testify within a permissive core on issues pertaining to

25 treatment, without providing an expert report, based on what he or she learned through actual

26 treatment and from the plaintiff's records up to and including that treatment."  Fielden v. CSX

27 Transp., Inc., 482 F.3d 866, 871 (6th Cir. 2007), as amended on denial of reh'g and reh'g en banc

28 (July 2, 2007); see also Goodman, 644 F.3d at 819 (a treating physician may testify to and opine

1    on what they saw and did without the necessity of the proponent of the testimony furnishing a

2    written expert report).  Accordingly, Dr. Chauhan may testify as a non-retained expert in the trial

3    of this matter.

4        Plaintiff argues that allowing this evidence is substantially more harmful than probative,

5    but has failed to adequately demonstrate that he would suffer substantially more harm than the

6    probative value of the evidence.  Here, the issues to be determined by the jury will be whether

7    Plaintiff's leave was indeterminate and the evidence on summary judgment showed that his

8    ability to work was continually changing from the time of the accident until he was terminated

9    due to his need for inpatient and outpatient treatment.  His physical condition, especially during

10    the months following the accident, and his further need for inpatient treatment is probative as to

11    whether Plaintiff's leave was indeterminate.

12        Plaintiff's second motion *in limine* is granted in part and Defendant may not proffer expert

13    testimony of Dr. Vaughn, and Dr. Chauhan may testify as an expert to the extent that his opinions

14    were formed during the course of treatment.[1]

15        3.    Evidence of Total Temporary Disability

16        **a.**    **Plaintiff's Position**

17        Plaintiff's third motion *in limine* seeks to exclude evidence that Dr. Vaughn deemed him

18    totally temporarily disabled on April 10, 2018, and that Dr. Chauhan stated Plaintiff was totally

19    temporarily disabled on October 16, 2018.  Plaintiff contends that Defendant seeks to introduce

20    this evidence to prove that he would be on indefinite leave, but that the workers compensation

21    term "Totally Temporary Disability" does not absolve the employer from participating in the

22    reasonable accommodation process under the ADA or FEHA.  Plaintiff asserts that the finding of

23    total temporary disability has no bearing on whether he could have returned to work and is not

24    relevant.[2]

25

---

26   [1] Plaintiff only sought to exclude expert testimony as to Plaintiff's ability to return to work.  The ruling here does not

27   preclude Defendant from offering percipient witness testimony from the treating physicians as to Plaintiff's physical condition, but addresses only opinion evidence as to Plaintiff's ability to work.

28   [2] The Court has considered Plaintiffs argument that neither Drs. Vaughn or Chauhan were designated as experts and their testimony should be precluded at trial pursuant to Rule 37 in Plaintiff's second motion *in limine*.

1    **b.      Defendant's Position**

2       Defendant opposes the motion on the ground that the doctors who examined Plaintiff after

3    his industrial accident determined that he could not work at all and the words "totally temporarily

4    disabled" or "TTD" have nothing to do with the crux of the treatment records or the anticipated

5    testimony.

6    **c.      The Court's Ruling**

7       Plaintiff relies on cases which address whether a plaintiff is judicially estopped from

8    asserting claims under the Fair Employment and Housing Act ("FEHA") due to prior assertions

9    that she was disabled.  See Prilliman v. United Airlines, Inc., 53 Cal.App.4th 935, 963 (1997)

10   (The receipt of such disability benefits does not answer the question as to whether and employer

11   violates the FEHA by failing to make known to an employee other suitable job opportunities

12   within the company.); Bell v. Wells Fargo Bank, N.A., 62 Cal.App.4th 1382, 1388 (1998), as

13   amended (May 5, 1998)) (The positions taken by the plaintiff in his disability applications were

14   not mutually exclusive and defendant had not met the high bar for judicial estoppel.); Jackson v.

15   County of Los Angeles, 60 Cal.App.4th 171, 190 (1997) (finding judicial estoppel based on

16   plaintiff's statements in his workers' compensation case).  However, none of the findings in these

17   cases specifically address the admissibility of the findings of a claimant's doctors in subsequent

18   proceedings under the FEHA.

19      In the context of workers' compensation under California law, a disability "is a composite

20   of two principal elements . . . (1) actual incapacity to perform the tasks usually encountered in

21   one's employment and the wage loss resulting therefrom, and (2) physical impairment of the body

22   that may or may not be incapacitating."  Skelton v. Workers' Comp. Appeals Bd., 39 Cal.App.5th

23   1098, 1106 (2019), review denied (Dec. 18, 2019) (quoting Allied Compensation Ins. Co. v.

24   Industrial Acc. Com., (1963) 211 Cal.App.2d 821, 831 (1963)).   "Temporary disability is

25   incapacity to work that is reasonably expected to be cured or materially improved with proper

26   medical treatment."  Skelton, 39 Cal.App.5th at 1106.

27      Under California's workers' compensation system, "[t]he purpose of temporary disability

28   indemnity is to provide interim wage replacement assistance to an injured worker during the

period he or she is healing."  Gamble v. Workers' Comp. Appeals Bd., 143 Cal.App.4th 71, 79 (2006), as modified (Sept. 26, 2006).  "Depending on the severity of the injury, workers can be deemed partially or totally temporarily disabled and will receive temporary disability until they recover or become permanently disabled."  Gamble, 143 Cal.App.4th 79-80.  "An employee is totally disabled 'if [s]he is unable to earn any income during the period when [s]he is recovering from the effects of the injury.' "  Herrera v. Workmen's Comp. Appeals Bd., 71 Cal.2d 254, 257 (Cal. 1969) (interpreting Cal. Labor Code § 4653); see also Huston v. Workers' Comp. Appeals Bd., 95 Cal.App.3d 856, 866 n. 15 (1979) (quoting (2 Hanna, Calif. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1979) s 13.01(2)) ("Temporary disability, is 'total' when it produces complete, or a substantially complete, cessation of earning power.").  "An employee is considered temporarily partially disabled if he is able to earn some income during his healing period but not his full wages."  Herrera, 71 Cal.2d at 257.

While a temporary disability is total when it produces complete, or a substantially complete, cessation of earning power, Huston, 95 Cal.App.3d at 866 n. 15,

> the workers' compensation definitions of 'disability' do not distinguish between marginal and essential functions and do not consider whether an individual can work with reasonable accommodation.  In many workers' compensation cases, a person has a 'total disability' when s/he is unable to do certain tasks, even if those tasks are marginal functions or if s/he could perform them with reasonable accommodation.    Thus, a person may be 'totally disabled' for workers' compensation purposes and yet still be able to perform a position's essential functions with or without reasonable accommodation.

Jackson, 60 Cal.App.4th at 188.  Accordingly, the Court finds that evidence that Plaintiff was found to be totally temporarily disabled would be likely to confuse the jury and would be more prejudicial than probative in this action.

Defendant argues that the fact that Plaintiff's treatment providers found him to be unable to work is probative, however, it is the medical findings that the doctors made and not the fact that under workers' compensation law he was totally disabled that would be relevant.  Therefore, Defendant is not precluded from presenting evidence of Plaintiff's subsequent workers' compensation medical findings and the physician's opinion, in accord with the prior ruling on Plaintiff's second motion in limine, on Plaintiff's ability to work.  However, Defendant is

1  precluded from introducing evidence that Plaintiff was found to be "totally temporarily disabled"

2  and shall so instruct the witnesses in this action.

3      Plaintiff's third motion *in limine* is granted and Defendant is precluded from presenting

4  evidence that Plaintiff was found to be "totally temporarily disabled."

5      4.   <u>Evidence from Mr. Mahala on Whether the On-Call Policy was a Smart or Prudent

6         Policy</u>

7      **a.**    **Plaintiff's Position**

8      Plaintiff's fourth motion *in limine* seeks to exclude Defendant's rebuttal expert, Dr.

9  Mahala, from opining on the economic wisdom of Defendant's on-call policy.  Plaintiff asserts

10  that the testimony is not relevant and is beyond the scope of rebuttal testimony because their

11  expert, Mr. Lloyd, did not opine on whether the policy was smart, prudent, or economical.

12  Further, Plaintiff argues that the opinion is based on a faulty premise that employees were paid for

13  the privilege of being on call which is not the case.  Plaintiff asserts that even if there is some

14  perceived relevance to Dr. Mahala's opinion, it is substantially outweighed by the prejudice it

15  would cause in confusing and or misleading the jury about the issues in this case.

16      **b.**    **Defendant's Position**

17      Defendant argues that the motion seeks to improperly exclude Dr. Mahala's opinion and

18  should be denied.  Defendant contends that the opinion at issue was addressed in response to the

19  ultimate question of whether Plaintiff was entitled to unpaid wages and addresses the implicit

20  assumption in Mr. Lloyd's report that the on call policy was legally noncompliant and the issue of

21  whether Defendant's on call policy is legally complaint.  Defendant asserts that Dr. Mahala's

22  opinion is not beyond the bounds of rebuttal expert testimony.

23      **c.**    **The Court's Ruling**

24      Defendant contends that Mr. Lloyd based his opinion on the following assumptions:

25  Plaintiff worked eight hours a day and was on call during off hours (24/7); California law

26  required calculating worker pay at 1.5 times the hourly rate for work over 8 hours in a single day

27  and 40 hours in a single workweek and for the first 8 hours of a seventh consecutive workweek;

28  two times the hourly rate for work over 12 hours in a single workday and for work over 8 hours

1   on the seventh consecutive day of work; and that Plaintiff was only compensated for time worked.

2   (Analysis of Damages , ECF No. 53-1 at 51.)

3        Dr. Mahala's opinion states,

4        While the ultimate question of whether the Plaintiff is entitled to unpaid wages as
         contemplated by Plaintiff's expert is a legal one, as an economic matter it is
5        difficult to see how Defendant would have willingly entered into an employment
         agreement with Plaintiff such that it would have paid him for every minute of
6        every day while he was employed by Praxair.  This theory requires a belief that
         Praxair would have willingly entered into an employment agreement whereby it
7        faced total annual labor costs of approximately $400,134, before the value of any
         benefits, for the services of one maintenance employee.  Why would Praxair enter
8        into such an agreement when it could have alternatively hired three maintenance
         personnel, each one working an eight-hour shift (with only 16 hours of overtime
9        during the weekends), and save thousands of dollars in such costs?  For example,
         suppose Praxair agreed to pay each shift worker $58,000 per annum for his
10       services (the schedule and salary paid to Mr. Garcia).  Praxair's total labor
         expense, before benefits, would be $278,400 (including overtime), more than
11       $121,000 less than a scheme that pays one worker for around-the-clock services.
         Even accounting for the extra benefit costs to Praxair for the two incremental
12       workers, Praxair would be far better off than hiring only one maintenance
         employee.
13
14  (Expert Report of Charles R. Mahala, Ph.D. ¶ 6, ECF No. 52-1 at 15.)

15       Defendant argues that the full excerpt of the report sought to be excluded demonstrates

16  that the testimony serves to rebut certain assumptions about the terms of the on-call policy that

17  were made by Mr. Lloyd in his report.  Dr. Mahala's testimony may properly be offered to rebut

18  the assumptions made by Mr. Lloyd in proffering his opinion regarding how damages were to be

19  calculated.

20       Here, Plaintiff has not demonstrated that Dr. Mahala's opinion would be inadmissible on

21  all potential grounds.  McConnell, 995 F.Supp.2d at 1167; Hitesman, 2016 WL 3523854, at *2.

22  The issue is properly considered at trial after the testimony of Plaintiff's expert has been heard

23  and the Court can consider the evidence in its proper context.  McConnell, 995 F.Supp.2d at

24  1167; Hitesman, 2016 WL 3523854, at *2 Jonasson, 115 F.3d at 440.

25       Plaintiff's fourth motion *in limine* is denied without prejudice to being renewed at trial.

26       5.   Testimony of Mr. Sarkisian

27       a.   **Plaintiff's Position**

28  Plaintiff's fifth motion *in limine* seeks to exclude the testimony of Defendant's rebuttal

expert, Mr. Sarkisian.  Plaintiff contends that Mr. Sarkisian's report and deposition testimony addressed the employability of Plaintiff.  Plaintiff argues that since Plaintiff's expert did not use Mr. Sarkisian's report to rebut his expert the testimony regarding the employability of Plaintiff must be excluded under Rule 37(c).  Plaintiff asserts that his expert opined regarding lost wages and the testimony of Mr. Sarkisian is not rebuttal testimony.

   **b.**  **Defendant's Position**

   Defendant counters that Plaintiff attempts to improperly narrow the testimony of Mr. Sarkisian and may be misunderstanding that his expert only opined as to lost wages.  Defendant contends that Mr. Lloyd also offered testimony as to Plaintiff's employability after his industrial accident and his analysis considered the length and nature of Plaintiff's previous employment and expectations associated with the same.  Mr. Lloyd based his analysis on Plaintiff's ability to return to work after his industrial accident as well as the length of his possible employment, and made determinations as to the reasonability of Plaintiff's position or replacement position.  Defendant contends that Mr. Sarkisian is qualified to speak to the assumptions that Mr. Lloyd based his opinion on, including whether Plaintiff would be able to return to his job with Defendant after his injury.

   Defendant also contends that even if Mr. Sarkisian is an expert that should have been disclosed, the failure to disclose is substantially justified or harmless.

   **c.**  **The Court's Ruling**

   Defendant argues that Mr. Lloyd based his opinions on assumptions regarding Plaintiff's ability to return to work for Defendant and the possible length of employment with Defendant following his industrial accident.  Mr. Lloyd considered Plaintiff's ability to return to work for Defendant after his industrial accident, as well the possible length of Plaintiff's employment with Defendant following Plaintiff's industrial accident.  (Lloyd Depo., 10:12-21, 46:6-48:17.)  Mr. Lloyd based his analysis on "data . . . to determine how long a person would be in [his former] position or replacement position" and made determinations as to the reasonability of Plaintiff's "position and/or replacement position."  (Lloyd Depo., 49:10-15, 50:5-16.)  In conducting his analysis, Mr. Lloyd testified that his analysis relied on: nearly 40 years of economic data and

1   labor reports, his study of specific industries and labor, and treatises on wage loss." (Lloyd

2   Depo., 47:20-48:17.)  He also claimed to be schooled, and able to speak to, the labor in the

3   geographic area at issue, and range of salaries appropriate for such positions.  (Lloyd Depo.,

4   54:24-55:14.)

5       Defendant argues that Mr. Sarkisian may properly testify to the assumptions that Mr.

6   Lloyd employed in making his report, such as that Plaintiff was able to return to work with

7   Defendant post-industrial injury.  Defendant seeks to present the testimony of Mr. Sarkisian to

8   rebut the assumptions that Mr. Lloyd made in proffering his opinion regarding Plaintiff's ability

9   to work following his industrial injury.  To the extent that Mr. Sarkisian testifies to disprove the

10  assumptions made by Mr. Lloyd his rebuttal testimony may be proper.  However, it does appear

11  that Mr. Sarkisian's testimony could well be outside that which would rebut the testimony of Mr.

12  Lloyd.  Therefore, Defendant shall be prepared to provide an offer of proof outside the presence

13  of the jury before calling Mr. Sarkisian in rebuttal at trial.

14      The Court finds that Plaintiff has not demonstrated that Mr. Sarkisian's opinion would be

15  inadmissible on all potential grounds.  McConnell, 995 F.Supp.2d at 1167; Hitesman, 2016 WL

16  3523854, at *2.  Here again, the issue is properly considered at trial after the testimony of

17  Plaintiff's expert has been heard and the Court can consider the evidence in its proper context.

18  McConnell, 995 F.Supp.2d at 1167; Hitesman, 2016 WL 3523854, at *2 Jonasson, 115 F.3d at

19  440.

20      To the extent that Defendant seeks to have the Court designate Mr. Sarkisian as an expert,

21  rather than as a rebuttal expert, the Court finds allowing Defendant to convert Mr. Sarkisian into

22  an expert, rather than a rebuttal expert would significantly and unfairly prejudice Plaintiff at this

23  juncture of the case.  Specifically, the parties were required to disclose expert witnesses by

24  November 15, 2019. (Scheduling Order, ECF No. 13.)  On December 17, 2019, Plaintiff moved

25  to strike Defendant's expert disclosures because it did not include expert reports.  (Mot. to Strike

26  Def.'s Expert Disclosures, ECF No. 21.)  In opposition to the motion to strike Defendant's expert

27  disclosures, Defendant asserted that Dr. Mahala and Mr. Sarkisian were not being offered as

28  experts in this case, but were rebuttal experts.  (Def.'s Opp. to Pl.'s Mot. to Strike Def.'s Expert

Disclosures, 6, ECF No. 28.)  In his declaration, defense counsel stated, "As Defendant repeatedly indicated to Plaintiff, Defendant retained its experts for the purposes of rebuttal.  Defendant, in the interest of advancing the progress of expert discovery, timely provided Initial Expert Disclosures on the deadline set for disclosure of expert witnesses." (Decl. of Jason H. Borchers in Supp. of Def.'s Opp'n to Pl.'s Mot. to Strike ¶ 3, ECF No. 28-1.)  During a November 26, 2019, meet and confer, "counsel for Defendant represented that Defendant's experts could not prepare meaningful reports detailing their rebuttal opinions until obtaining the substance of the testimony they were to rebut, via deposition of Plaintiffs experts."  (Id. at ¶ 4.)  "On December 3, 2019, Defense counsel sent an email to Plaintiff's counsel, again noting that Defendant expected that its experts would be rebutting the evidence and testimony offered by that of Plaintiff."  (Id. at ¶ 5.)  "Once Plaintiff's expert is deposed, Defendant's experts will be able to complete a rebuttal opinion report, which can and will be served *before* the close of expert discovery on March 13, 2020."  (Id. at ¶ 8 (emphasis in original).)   On February 20, 2020, an order issued denying Plaintiff's motion to strike the expert disclosures and the expert discovery deadline was continued to April 13, 2020 to allow Plaintiff to depose Defendant's rebuttal experts after their reports were provided.  (ECF No. 32.)

To allow Defendant to now change its position, approximately a year after the assertion that these experts were only being offered for rebuttal and allow Mr. Sarkisian to testify as an expert witness at this late date would be prejudicial to Plaintiff.   Plaintiff has relied on Defendant's assertion that Mr. Sarkisian was being proffered as a rebuttal expert for the past ten months and discovery has long been closed.  To allow Defendant to now change its position and call Mr. Sarkisian as an expert in their case would require Plaintiff to reassess his trial strategy at a time when his energy would be focused on preparing the case for trial.  See Jones v. Ballesteros, No. 10-CV-02661-KJM-EFB, 2016 WL 8731398, at *4 (E.D. Cal. Aug. 26, 2016); GenSci OrthoBiologics v. Osteotech, Inc., No. CV 99-10111 MRP, 2001 WL 36239743, at *19 (C.D. Cal. Oct. 18, 2001).  Defendant has had ample opportunity since the motion to strike was decided and has never moved to have Mr. Sarkisian designated as an expert witness in this action.  Rather, Defendant waited until the opposition to the motions *in limine* to suggest that it would not be

prejudicial to allow him to testify as other than rebuttal.  Further, Defendant has offered no explanation for why its position on the testimony of Mr. Sarkisian has changed.  The Court finds that the prejudice to Plaintiff weighs heavily in favor of finding that Defendant is precluded from presenting Mr. Sarkisian as an expert in this action due to the failure to disclose him as an expert witness.  Therefore, Mr. Sarkisian's testimony may only be offered in rebuttal to Plaintiff's expert testimony.

Plaintiff's fifth motion *in limine* is denied without prejudice to be renewed at trial.

### 6.   Collateral Source Payments

#### a.   **Plaintiff's Position**

Plaintiff's sixth motion *in limine* seeks to preclude evidence of collateral source payments, specifically Worker's Compensation payments, he received while disabled.  Plaintiff argues that Defendant may seek to admit such evidence as part of its defense to liability or damages and the payments are inadmissible under California law.  Plaintiff asserts that any probative value of the evidence is substantially outweighed by the danger of confusing the issues and or misleading the jury with respect to the distinct issue of Plaintiff's damages.

#### b.   **Defendant's Position**

Defendant counters that because Plaintiff's workers' compensation benefits are not wholly independent of Defendant who pays the premiums the collateral source rule does not apply.  Further, Defendant contends that the evidence is offered to refute Plaintiff's testimony that he urgently needed to return to work after his industrial accident.  Defendant argues that the fact that he was receiving disability and worker's compensation benefits provided financial security that removed the need for the parties to make knee jerk reactions to return him to his safety sensitive position.

#### c.   **The Court's Ruling**

The collateral source rule is well established in California, and California has been described as a "firm proponent of the 'collateral source rule.' "  Mize-Kurzman v. Marin Cmty. Coll. Dist., 202 Cal. App. 4th 832, 872 (2012) (quoting Hrnjak v. Graymar, Inc., 4 Cal.3d 725, 729 (1971)).  The collateral source rule "operates both as a substantive rule of damages and as a

1  rule of evidence." Mize-Kurzman, 202 Cal.App.4th at 872 (quoting Rotolo Chevrolet v. Superior

2  Court 105 Cal.App.4th 242, 245 (2003)); see also Quintero v. United States, No. 1:08-CV-01890-

3  OWW, 2010 WL 5071045, at *4 (E.D. Cal. Dec. 7, 2010) (California's "collateral source rule has

4  two components: (1) a substantive rule that prohibits reduction of the damages plaintiff would

5  otherwise receive for plaintiff's receipt of collateral source compensation; and (2) an evidentiary

6  rule that limits what the jury is told about plaintiff's receipt of collateral source compensation.")

7  As a rule of evidence, the collateral source rule "precludes the introduction of evidence of the

8  plaintiff being compensated by a collateral source unless there is a "persuasive showing" that

9  such evidence is of 'substantial probative value' for purposes other than reducing damages."

10  Arambula v. Wells, 72 Cal.App.4th 1006, 1015 (1999); see also Howell v. Hamilton Meats &

11  Provisions, Inc., 52 Cal.4th 541, 552 (2011) (The evidentiary component provides that since a

12  collateral payment may not be used to reduce recoverable damages, evidence of such a payment is

13  inadmissible for that purpose.).

14      "The idea [behind the collateral source rule] is that tortfeasors should not recover a

15  windfall from the thrift and foresight of persons who have actually or constructively secured

16  insurance, pension or disability benefits to provide for themselves and their families." McKinney

17  v. California Portland Cement Co., 96 Cal.App.4th 1214, 1222 (2002). "Examples of collateral

18  sources that may not be used to decrease a plaintiff's recovery include medical insurance, pension

19  and disability benefits, and continued wages paid by an employer." McKinney, 96 Cal.App.4th at

20  1222. "The collateral source rule generally does not apply and consequently, damages are offset

21  by the amount of benefit payments, when the benefit payment comes from the employer." Mize-

22  Kurzman, 202 Cal.App.4th at 874.   That a plaintiff may receive more than he would have

23  received prior to the injury does not impact the collateral source rule.   Mize-Kurzman, 202

24  Cal.App.4th at 873; McKinney, 96 Cal.App.4th at 1224.

25      In Helfend v. Southern Cal. Rapid Transit Dist. 2 Cal.3d 1 (1970), the California

26  explained the policy behind the collateral source rule.

27          The collateral source rule expresses a policy judgment in favor of encouraging
            citizens to purchase and maintain insurance for personal injuries and for other
28          eventualities.   Courts consider insurance a form of investment, the benefits of

which become payable without respect to any other possible source of funds.  If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance.

Helfend, 2 Cal. 3d at 10.  The Court reaffirmed their "adherence to the collateral source rule in tort cases in which the plaintiff has been compensated by an independent collateral source-such as insurance, pension, continued wages, or disability payments-for which he had actually or constructively . . . paid or in cases in which the collateral source would be recompensed from the tort recovery through subrogation, refund of benefits, or some other arrangement."  Id. at 13-14. The collateral source "rule applies only to payments that come from a source entirely independent of the tortfeasor and does not apply to payments by joint tortfeasors or to benefits the plaintiff receives from a tortfeasor's insurance coverage."  Id. at 9 n.7 (citations omitted.)

The first issue to be addressed here is whether, under California law, workers' compensation payments are a source to which the rule would apply.[3]  Plaintiff cites to Lund v. San Joaquin Valley R.R., 31 Cal.4th 1 (2003), as modified on denial of reh'g (Sept. 24, 2003), in which an injured railroad worker brought a negligence suit against his employer under the Federal Employers Liability Act (FELA).  On appeal, the California Supreme Court was considering whether a plaintiff could inform the jury that he was not entitled to benefits under California's workers' compensation law.  Lund, 31 Cal.4th at 5.  The Court stated that "[u]nder both federal and California law the jury in a FELA action should, as a general rule, not be told whether the injured railroad worker action can also seek recovery from any other source, such as workers' compensation."  Id. at 7.

Plaintiff also cites to Lee v. W. Kern Water Dist., 5 Cal.App.5th 606 (2016), in which the issue was whether workers' compensation was the exclusive remedy for the employee's injuries. The parties disputed whether evidence of the workers' compensation was admissible in the action with the plaintiff arguing that it was precluded by the collateral source rule and the defendant

---

[3] Defendant argues that under federal law workers' compensation payments are not a collateral source, but the Court applies the substantive component of California's collateral source rule on this issue.

arguing it was admissible because they were required to show that the plaintiff was covered by workers' compensation to show that it was the exclusive remedy for her injuries.  Lee, 5 Cal. App.5th at 635-636.  The court stated,

> It is unclear whether the collateral source rule applies in this situation.  Ordinarily, the rule applies only to sources of compensation "wholly independent" of the defendant.  (Helfend v. Southern Cal. Rapid Transit Dist. (1970) 2 Cal.3d 1, 6, 84 Cal.Rptr. 173, 465 P.2d 61.)   In general, the plaintiff's insurer is a wholly independent source while a cotortfeasor or a cotortfeasor's insurer, or the tortfeasor's own insurer, is not.  (Id. at pp. 9–10, 84 Cal.Rptr. 173, 465 P.2d 61; Pacific Gas & Electric Co. v. Superior Court (1994) 28 Cal.App.4th 174, 178, 180, 33 Cal.Rptr.2d 522.)   Here the collateral source was workers' compensation benefits paid by the district's policy.  Under the general principles just described, this would not be an independent source; the defendant is the policyholder, so the collateral source rule would not apply.  Yet the California Supreme Court held that the rule did apply in a case in which an employee received benefits from the employer's workers' compensation policy and then sued a third-party tortfeasor, the compensation insurer having waived its right of subrogation against the third party. (De Cruz v. Reid (1968) 69 Cal.2d 217, 223–227, 70 Cal.Rptr. 550, 444 P.2d 342.) A commentator explained this result by pointing out that workers' compensation insurance is a benefit of employment; thus the employee can be deemed to have paid for the insurance with his labor, so the situation is similar to that in which the collateral source is the plaintiff's own insurance and therefore the rule applies. (Note, California's Collateral Source Rule and Plaintiff's Receipt of Uninsured Motorist Benefits (1986) 37 Hastings L.J. 667, 674-675.)  In Lund v. San Joaquin Valley R.R. (2003) 31 Cal.4th 1, 1 Cal.Rptr.3d 412, 71 P.3d 770, the California Supreme Court appeared to assume the collateral source rule generally applies to workers' compensation benefits.  (Id. at pp. 10–11, 1 Cal.Rptr.3d 412, 71 P.3d 770 [stating that, as general rule, when employee sues employer under Federal Employers' Liability Act, jury should not be told of employee's ineligibility for workers' compensation benefits, just as juries ordinarily should not be told of plaintiff's collateral sources of compensation for injury caused by defendant].)

Lee, 5 Cal.App.5th at 636–37.  The court found that "it was probably correct in this case to apply the collateral source rule to exclude evidence of the benefits received by Lee."  Id. at 637.  The court considered that the collateral source rule appeared inopposite because the chance of double recovery in the case was remote.  Id.  The parties agreed that if a judgment was entered in favor of the plaintiff some means would be employed to offset or refund the workers' compensation benefits.  Id.  But the court did not decide whether the collateral source rule was applicable because even if the ruling was incorrect, the plaintiff had not shown that it was prejudicial.  Id.

As discussed in Lee, the California Supreme Court addressed the collateral source rule and the application of the rule to benefits provided under the Labor Code in De Cruz, 69 Cal.2d 217, 219 (1968).  De Cruz was a wrongful death action brought by the family of an agricultural worker

1   who was killed when he fell out of a trailer and the trailer ran over him.  De Cruz, 69 Cal.2d at

2   219-20.  The dependents of the decedent filed a claim for death benefits with what is now the

3   Worker's Compensation Appeals Board.  Id. at 220.  The decedents prevailed at trial and on

4   appeal the defendant argued that the court erred by excluding evidence of the death benefit award

5   and permitted the plaintiff's to get a "double recovery."  Id. at 221.

6          The Court considered the benefits under the collateral source rule and that Witt v. Jackson,

7   57 Cal.2d 57 (1961), had held that a negligent employer "should not profit by his own wrong and

8   take advantage of the reimbursement remedies provided him by the Labor Code.  De Cruz, 69

9   Cal.2d at 225.  Therefore, when an employer is concurrently negligent, the decision "limited the

10  prior rule declaring that the receipt of workmen's compensation benefits is extraneous to the

11  issues and cannot be considered in reduction of the tortfeasor's damages."  Id.  "[W]hether an

12  action is brought by the employer or the employee, the third party tort-feasor should be able to

13  invoke the concurrent negligence of the employer to defeat its right of reimbursement, since, in

14  either event, the action is brought for the benefit of the employer to the extent that compensation

15  benefits have been paid to the employee."  De Cruz, 69 Cal.2d at 225 (quoting Witt, 57 Cal.2d at

16  72.)  Therefore, where an employer is concurrently negligent with a third party tortfeasor, "the

17  receipt of workmen's compensation benefits is extraneous to the issues and cannot be considered

18  in reduction of the tortfeasor's damages ."  De Cruz, 69 Cal.2d at 225.  The court held that even

19  where the employer was not negligent, "the compensation benefits inure to the benefit of the

20  injured employee or his dependents, as the case may be, as payments received by them from a

21  collateral source."  Id. at 223.  The court went on to hold that where the employer is not

22  concurrently negligent, the compensation paid is intended to benefit only the employee and not

23  for the benefit of the third party tortfeasor and is therefore a source wholly independent of the

24  wrongdoer.  Id.

25          Although the justification for applying the collateral source rule "is less strong when the

26  collateral source is workers' compensation benefits because the employee plaintiff has not

27  directly contributed to the workers' compensation fund[;]" the rule is applied because "the

28  employee constructively pays for the benefits through his labor."  Pacific Gas & Electric Co., 28

Cal.App.4th at 179–80.  California cases find that "employment-related payments may not be used to reduce a plaintiff's damage award."  McKinney, 96 Cal.App.4th at 1222 n.6 (citing Johns, Cal. Damages: Law and Proof (5th ed.  2001) Collateral Source Rules, §§ 1.65–1.69, pp. 1–82 to 1–84 [listing disability income insurance, wages paid by employers, accumulated employment leave, unemployment compensation and disability retirement or pension benefits as collateral sources that do not reduce damages]).  The Court finds that based upon the review of the case law, the California Supreme Court would hold that workers' compensation benefits are not a source wholly independent because the employee has constructively paid for the benefits through his labor.  Therefore, the collateral source rule would apply to workers' compensation payments.

The parties dispute whether California or federal law would apply to the evidentiary purpose of the collateral source rule.  "When a case is being heard in federal court, the evidentiary, as opposed to the substantive, aspects of the collateral source rule are governed by the Federal Rules of Evidence, particularly Rules 401, 402, and 403."  England v. Reinauer Transp. Companies, L.P., 194 F.3d 265, 273 (1st Cir. 1999); see also Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 884 (10th Cir. 2006) (holding that Federal Rules of Evidence govern in diversity case, but noting that state rules of evidence may implicate the relevancy of certain evidence under Rule 401).  To the extent that receipt of unemployment benefits is relevant for purposes other than reducing a damage award, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Defendant argues that the evidence of the workers' compensation payments are admissible for the purpose of refuting Plaintiff's anticipated testimony that he urgently needed to return to work.  The California Supreme Court has cautioned that allowing collateral source payments for other purposes carries such grave possibility of prejudice that it should be avoided.  Arthur v. Gallagher Bassett Servs., Inc., No. CV 09-4882 SVW (CWX), 2010 WL 11596468, at *3 (C.D. Cal. June 1, 2010).

The potentially prejudicial impact of evidence that a personal injury plaintiff

received collateral insurance payments varies little from case to case. Even with cautionary instructions, there is substantial danger that the jurors will take the evidence into account in assessing the damages to be awarded to an injured plaintiff. Thus, introduction of the evidence on a limited admissibility theory creates the danger of circumventing the salutary policies underlying the collateral source rule. Admission despite such ominous potential should be permitted only upon a persuasive showing that the evidence sought to be introduced is of substantial probative value.

Hrnjak, 4 Cal.3d 725, 732-33.

To achieve the purpose of the collateral source rule under California law, the Court finds that the probative value of the compensation benefits would be outweighed by the risk of prejudice to Plaintiff. Therefore, evidence of the workers' compensation benefits is generally inadmissible. However, should Plaintiff present testimony that implies that he should have been returned to work due to financial hardship then precluding evidence that he received such benefits would be highly probative to refute the claim. In that situation, the probative evidence of the payments would substantially outweigh the prejudicial effect of depriving Defendant of the use of the evidence to rebut the assertion. Accordingly, the workers' compensation payments could be admissible to rebut the claim of financial hardship. Should Defendant believe that Plaintiff has presented evidence that would make the workers' compensation benefits admissible, the issue shall be raised outside the presence of the jury prior to attempting to admit such evidence.

Plaintiff's sixth motion *in limine* is granted.

**B.    Defendant's Motions *In Limine***

1.    Expert Testimony of Mr. Lloyd

Defendant's first motion *in limine* seeks to preclude Plaintiff from offering expert testimony of Mr. Lloyd. (Def.'s Mot. 9.)

**a.    Defendant's Position**

Defendant's challenge comes in four main arguments. First, Defendant argues Mr. Lloyd's opinion is not based on sufficient facts or data as Mr. Lloyd admitted that he did not conduct an independent investigation of the complaint's allegations but used facts fed to him by Plaintiff. Specifically, Defendant alleges Mr. Lloyd did not analyze or investigate whether Plaintiff worked an eight (8) hour day and was on call during off duty hours 24/7, worked a 48-

week year, participated in Defendant's health benefit plan at all times during his employment, or had the reasonable ability and/or opportunity to return to work with or without reasonable accommodation on the dates provided by Plaintiff's counsel.  Defendant further contends Mr. Lloyd admitted some of the data on which he based calculations on was outside his area of expertise, and that Mr. Lloyd drew additional, unfounded assumptions from "Zippia" information, a website that provides information about employer or companies, which fails to pass muster under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 US 579, 596 (1993).

Second, Defendant contends that Mr. Lloyd's testimony should be excluded because it is limited to basic mathematical calculations which are not scientific, technical, or other scientific knowledge under Rule 702(a).  Defendant contends Mr. Lloyd performed "grade-school arithmetic (and poorly, at that) so as to generate the 'damages' assessment set forth" in the report. (Def's Mot. 12.)  Defendant directs the Court to deposition testimony, arguing this type of data entry and basic arithmetic is not "scientific, technical, or other specialized knowledge," Fed. R. Evid. 702 (a), "not beyond the common knowledge of an average grade-school student [and] [i]ndeed, the jury could just as well perform the function Mr. Lloyd wants to perform."  (Defs. Mot. 13.)  Finally, Defendant states: "*In effect, Plaintiff seeks to call Mr. Lloyd to the stand at trial to serve as a human calculator.*"  (Def.'s Mot. 13.)

Third, Defendant argues that Mr. Lloyd's testimony should be excluded because his report and testimony are replete with basic mathematical calculation, and his initial findings were so riddled with errors that he had to supplement his report, "which acknowledged at least a dozen errors in his assumptions, analysis, and *basic math*."  Defendant contends that the errors and changes in the supplemental report make Mr. Lloyd's testimony unreliable.  Specifically, these changes increased Plaintiff's alleged damages by between 14% and 21% which Defendant states Mr. Lloyd attributes predominantly due to his use of a 52-week year for Plaintiff's pay, as opposed to his previous, incorrect assumption of a 48-week year of pay, in addition to two additional reasons for the change – i) his prior calculations assumed Plaintiff had actual compensation of $30,167, but Plaintiff's paystubs showed actual pay of $21,900; and, ii) the later trial date increased the amount of prejudgment interest.  (Def.'s Mot. 14.)

1    Fourth, Defendant contends that allowing the jury to infer that the basic mathematical

2    calculations opined by Mr. Lloyd constitute expert testimony is unduly prejudicial, will confuse

3    the jury as to the theories and value of Plaintiff's alleged damages, and will burden the Court and

4    the jury because of the potential need for time-consuming clarification of the evidence, and post-

5    trial motions to correct prejudicial error.

6        **b.        Plaintiff's Position**

7        Plaintiff's opposition brief does not address Defendant's four arguments individually.  In

8    response generally, Plaintiff emphasizes that: Mr. Lloyd was identified as an expert that would

9    "testify regarding Plaintiff's lost compensation and out-of-pocket expenses," and Mr. Lloyd has

10   been certified as an expert and provided testimony in over 150 cases, approximately 20 to 30 of

11   those were cases involving wrongful termination in which he provided testimony concerning lost

12   compensation.  Plaintiff emphasizes counsel for Defendant has retained Mr. Lloyd as an expert to

13   calculate wage loss in wrongful termination cases, and that Praxair's counsel spent approximately

14   one hour during Mr. Lloyd's deposition confirming his expert experience in this area before tiring

15   of Mr. Lloyd's responses and moving on to a different topic.  (Opp'n 2.)

16       As for specific background, Plaintiff notes Lloyd holds a B.A. in Accounting (magna cum

17   laude) from the University of Utah; an MBA in Finance from the University of Utah, and is a

18   Certified Public Accountant; has been retained by law and accounting firms, investors, and

19   corporations; has been retained by the Internal Revenue Service, the Securities and Exchange

20   Commission, and Federal Elections Commission; has been qualified as an expert in federal, state,

21   bankruptcy, and tax courts, arbitration forums and the International Arbitration Court on damages

22   and valuation issues; has over 35 years of experience in wage-related case evaluation; and has

23   been retained as an expert over 500 hundred times, equally for plaintiffs and defendants.

24       Given an expert may base an opinion on facts or data in the case that the expert has been

25   made aware of or personally observed, Plaintiff argues that contrary to what Defendant claims,

26   Mr. Lloyd considered many documents for his expert report, including pleadings in this case,

27   payroll information, and Praxair's job summary – in which Praxair states Plaintiff has a 24/7 job –

28   he works a 40-hour work week and then is required to be on-call 24/7.  Thus, Plaintiff submits

that any argument regarding errors in Mr. Lloyd's report should be made during trial.

### c.     The Court's Ruling

Expert witnesses in federal litigation are governed by Rules 702 to 705 of the Federal Rules of Evidence.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based upon sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

An expert may testify regarding scientific, technical or other specialized knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue:

> The subject of an expert's testimony must be "scientific ... knowledge."  The adjective "scientific" implies a grounding in the methods and procedures of science.  Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation.  The term "applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds. . . But, in order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method.  Proposed testimony must be supported by appropriate validation-i.e., "good grounds," based on what is known.  In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

Daubert, 509 U.S. at589 (citations omitted).  An expert opinion is not objectionable just because it embraces an ultimate issue.  Fed. R. Evid. 704(a).

When an expert meets the threshold established by Rule 702 as explained in Daubert, the expert may testify and the jury decides how much weight to give that testimony.  Primiano v. Cook, 598 F.3d 558, 564–65 (9th Cir.2010) (citing United States v. SandovalMendoza, 472 F.3d 645, 654 (9th Cir. 2006)).  The inquiry into whether an expert opinion is admissible is a "flexible one" where shaky "but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  Primiano, 598 F.3d at 564 (citing

1    Daubert, 509 U.S. at 592-96).   The Supreme Court has held that "Rule 702 grants the district

2    judge the discretionary authority, reviewable for its abuse, to determine reliability in light of the

3    particular facts and circumstances of the particular case."   Kumho Tire Co., Ltd. v. Carmichael,

4    526 U.S. 137, 158 (1999).   As Rule 702 provides, an expert may be qualified by knowledge, skill,

5    experience, training, or education.   Fed. R. Evid. 702.   The Ninth Circuit has recognized that "the

6    advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace

7    more than a narrow definition of qualified expert."   Thomas v. Newton Int'l Enterprises, 42 F.3d

8    1266, 1269 (9th Cir. 1994).

9          Plaintiff identified Mr. Lloyd as an expert who would testify "regarding Plaintiff's lost

10   compensation and out-of-pocket expenses."   (ECF No. 53-1 at 9-10.)   Mr. Lloyd's resume and

11   experience demonstrates that he is experienced in analyzing damages and presenting expert

12   testimony in a wide variety of cases involving business, asset, or other financial valuations.   (Id.

13   at 26-27.)   Plaintiff proffers that Mr. Lloyd's experience includes working on approximately

14   twenty to thirty cases involving wrongful termination and presented testimony concerning lost

15   compensation.   (Pl.'s Opp'n 2, citing ECF No. 53-1 at 31-42.)   It is not abundantly clear to the

16   Court from review of this portion of the resume that Mr. Lloyd's work involved this many lost

17   compensation and wrongful termination actions,[4] however, it is clear he has presented significant

18   expert testimony concerning business, asset, or other financial valuations for litigation.   Mr. Lloyd

19   holds a B.A. in Accounting (magna cum laude) from the University of Utah; an MBA in Finance

20   from the University of Utah, and is a Certified Public Accountant.   (Id. at 26.)   Mr. Lloyd has

21   previously been retained by the Internal Revenue Service, the Securities and Exchange

22   Commission, and the Federal Elections Commission.   Id.)   These facts support finding Mr. Lloyd

23   meets the requirement that "the expert's scientific, technical, or other specialized knowledge will

24

---

25   [4] For example, this portion of the resume only appears to reference "wrongful discharge" in one of these listed
     actions (ECF No. 53-1 at 42), and does not appear to reference "termination," or "wages."  (ECF No. 53-1 at 31-42.)

26   However, Defendant's briefing does not appear to focus on Mr. Lloyd's qualifications, but rather his methods and the
     reliability of his work.  This dispute appears to have been hashed out a bit in the deposition by Defendant's counsel

27   also.  (Lloyd Dep. 21:5-23-5.)  For example, counsel asks "[i]t says you provided testimony regarding value waterfall
     and private equity ventures," and Mr. Lloyd responds "that sentence wasn't constructed well . . . He's alleging that he

28   was terminated improperly; that he's due cash compensation as well as his carried interests in various projects."
     (Lloyd Dep. 22:11-23.)

1  help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid.

2  702(a).

3      Defendant challenges Mr. Lloyd's testimony as insufficiently based on facts or data.

4  (Def.'s Mot. 10.)  "An expert may base an opinion on facts or data in the case that the expert has

5  been made aware of or personally observed."  Fed. R. Evid. 703.  At deposition, Mr. Lloyd was

6  asked what documents he brought to the deposition, and answered: "The first group is basically

7  the filings.· The second group relates to Mr. Garcia's employment.· Replacement compensation,

8  things like that.· So there are pay stubs.· There's information -- what Praxair calls a Benefits Bill.·

9  There's a job description.· There's information about Praxair, and there's a resumé for Mr.

10 Garcia."  (Lloyd Dep. 7:13-8:3, ECF No. 54-1 at 6-7.)  Plaintiff emphasizes Praxair's job

11 summary referenced here is particularly relevant in that it states the position is a 24/7 job, with a

12 forty-hour work week and a requirement to be on-call for issues during off hours.  (ECF No. 54-1

13 at 20.)  The Court finds this information supports meeting the requirement that "the testimony is

14 based upon sufficient facts or data."  Fed. R. Evid. 702(b).  Although Defendant has raised

15 legitimate concerns regarding independent investigation of underlying assumptions, the Court

16 finds Mr. Lloyd's testimony is based on sufficient facts or data for the purposes of this action, and

17 issues of the reliability of the testimony given the underlying information can be addressed at trial

18 and the jury can decide how much weight to provide the testimony.

19     Defendant has also raised legitimate concerns regarding the principles and methods

20 employed by Mr. Lloyd, as well as whether Mr. Lloyd applied such principles and methods

21 reliably to the facts of the case.  (Def.'s Mot. 13.)  Plaintiff does not provide the Court with a

22 substantive rebuttal of this argument, instead proffering simply that "[a]ny argument that Praxair

23 sets forth regarding errors in Mr. Lloyd's report should be made during trial."  (Pl.'s Opp'n 3,

24 citing Daubert, 509 U.S. at 596.)  The Court notifies counsel that Plaintiff would be better served

25 with a more thorough response to this aspect, as although such issues may be better addressed at

26 trial, there is still a threshold inquiry for this Court to determine, and Defendant has identified

27 multiple specific issues between the initial report provided by Mr. Lloyd and the supplemental

28 report.  (See Lloyd Updated Analysis of Damages, ECF No. 53-1 at 49-62.)  The updated report's

1    introduction acknowledges the changes:

> I previously prepared calculations for Garcia's lost income and out-of-pocket expenses and a narrative describing those calculations. This update describes the revised calculations I have prepared. This narrative and the calculations included in the exhibits attached to this narrative follow the same format and methodology as I previously prepared but have been updated specifically for: (1) the actual compensation received by Garcia pre-injury; (2) a revised amount for benefits to show the out-of-pocket money that Garcia had to pay after Praxair terminated his benefits; (3) the new trial date; (4) to clarify the explanations; and (5) to incorporate comments made by Defendant's economic expert. The result of all these changes is an increase in the damages of between 14% and 21% from my prior calculations. This is primarily due to the use of a 52-week year for Garcia's pay.
>
> There are three reasons for this increase in my calculations of Garcia's lost pay. First, my prior calculations tried to be conservative in assuming only a 48-week year of pay to Garcia. I have updated my calculation to agree with Dr. Mahla's [sic] 52-week year and Garcia's actual compensation. While my updated calculations result in a lower hourly wage rate because of the 52-week year (where Dr. Mahla [sic] and I agree: $58,000 ÷ 2,080 hours per year equals $27.88 per hour), compared to my prior calculation of a 48-week year ($58,000 ÷ 1,920 hours per year equals $30.22 per hour), the extra four weeks of Garcia's pay every year (where Dr. Mahla [sic] and I also agree), increased the damages under each scenario of my calculations. Second, my prior calculations assumed Garcia had actual Praxair compensation of $30,167 (gross), but his paystubs showed actual pay of $21,900 (gross) through the date of the injury and a total of $24,377 (gross) for his entire time with Praxair. This caused the measure of damages to increase in the current calculations because the previous version incorrectly assumed a higher compensation versus what he was actually paid. Third, the later trial date increases the calculated damages for the amount of prejudgment interest, also increasing the total damages amount.

(Id. at 49.)   In two other portions of the report, Mr. Lloyd enters footnotes as to specific information, as related to the information provided in the introduction. First, he notes: "My prior calculations understated the total weekly pay based on my interpretation of California employment law for daily and weekly pay rates, including overtime rates and when they begin. Dr. Mahla stated my calculations were 'biased downward,' or understated the calculated loss to Garcia [and] I have revised my analysis any my calculations for overtime pay per week are now the same as Dr. Mahla's [sic]."  (Id. at 51.)  Mr. Lloyd further references another change and writes: "This is different from my prior version, which assumed a 48-hour week year [and] [t]his variable has the most impact on the calculations from the prior version, which causes the damages to increase from the prior version."  (Id.)

       The Court finds the testimony is sufficiently "the product of reliable principles and

35

methods," and that the "witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702(c)-(d).  While it appears Mr. Lloyd did make mistakes or wrong assumptions between the reports, those aspects have been considered, updated, and based on the Court's review of the report and the expert's explanation incorporated directly into the report, adequately addressed.  Daubert's test of reliability is a flexible one and tests "not the correctness of the expert's conclusions but the soundness of his methodology."  Primiano, 598 F.3d at 564. Once an expert meets the threshold to testify, the jury decides how much weight to give to his testimony.  Id.  To the extent that Defendant challenges the correctness or unreliable nature of Mr. Lloyd's opinion, their recourse is not the exclusion of the testimony, but rather to refute it on cross-examination and by the testimony of their own expert witness.  Humetrix, Inc. v. Gemplus S.C.A., 268 F.3d 910, 9191 (9th Cir. 2001).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert, 509 U.S. at 596.  It is for the jury to weigh the evidence and decide which evidence to accept or reject.  Humetrix, Inc., 268 F.3d at 919.

While the Court has some concerns given Mr. Lloyd's need to correct certain assumptions or calculations between the initial report and the supplemental report, given the experience and education of Mr. Lloyd, the information relied upon, review of the deposition testimony, and the explanation of the changes provided by the expert, the Court finds Mr. Lloyd has met the threshold requirements of reliability under Daubert.  The issues raised by Defendant can be utilized in the cross-examination process.

Accordingly, Defendant's first motion in limine to exclude testimony from Plaintiff's expert Mr. Lloyd shall be denied.

### 2.   Cal-OSHA Investigation, Subsequent Findings, and Remediation

Defendant's second motion in limine seeks to preclude evidence of the Cal-OSHA investigation into Plaintiff's fall and injury.  Defendant contends this investigation is not relevant to the claims that are proceeding in this action and is a transparent attempt to prejudice the jury against Defendant.  (Def.'s Mot. 15.)

1       Plaintiff responds they are in agreement that fault concerning the fall is not relevant as the

2  case is about whether Defendant violated disability laws.  Plaintiff states that he agreed to

3  stipulate to Defendant's motion *in limine* concerning the use of the Cal-OSHA documents in his

4  case in chief, so long as Defendant did not attempt to assign blame to Plaintiff for the fall he

5  suffered at work.  (Pl.'s Opp'n 3-4.)  Thus, Plaintiff states it "is therefore curious why defendant

6  did not agree to the stipulation offered by Plaintiff, unless it intends to introduce evidence

7  assigning blame for the fall on Mr. Garcia."  (Pl.'s Opp'n 4.)  Plaintiff states such "evidence

8  concerning fault or blame is not only irrelevant as previously stated, but highly prejudicial and

9  should be excluded under FRE 403."  (Id.)

10      At the hearing, Plaintiff stated the only reason they would bring up such evidence is if

11  Defendant attempts to assign blame on Plaintiff for his injury.  Plaintiff voiced concerns about

12  there being some ambiguity in Defendant's briefing stating they do not "intend" to bring any such

13  evidence trying to assign blame on Plaintiff.  If that is the case, Plaintiff submitted there is no

14  need to introduce the Cal-OSHA documents.  Defendant clarified that the reason they did not

15  stipulate was due to the difficulty in creating terms that would adequately encompass this issue,

16  and Defendant does not want introduction of the facts surrounding the accident to be introduced

17  for a potential "shock value" to the jury.  In response, the Court discussed the fact that there

18  would likely and necessarily be some sort of discussion of the incident in order to set the stage for

19  presenting this case to the jury.  Defendant did not disagree, but holds the position that there are

20  circumstances surrounding the incident that may be attributable to Plaintiff, and again emphasize

21  they do not want the shock value of the accident presented to the jury, and request the

22  presentation be streamlined and to the point.

23      Based on the discussion at the hearing and the parties' positions and concerns, the Court

24  shall grant the motion *in limine* with the caveat that the Court will remain mindful of the

25  Defendant's concerns regarding undue emphasis on the facts of the accident, and Plaintiff's

26  concerns about Defendant's potential countering of any potential undue emphasis with discussion

27  of fault.

28      Accordingly, Defendant's second motion *in limine* to preclude evidence of the Cal-OSHA

1  investigation into Plaintiff's fall and injury shall be granted, subject to the caveats discussed

2  herein.

3         3.     Testimony of Isaiah Gonzales

4       Defendant's third motion *in limine* seeks to preclude the testimony of Isaiah Gonzales who

5  has a wage and hour action proceeding against Defendant in the Central District of California.

6  (Def.'s Mot. 18.)

7       **a.**     **Defendant's Position**

8       First, Defendant argues that the fact that another action is proceeding against Defendant

9  has no substantive bearing on whether Defendant engaged in the conduct alleged in this action,

10  and the evidence in Mr. Gonzales' case is irrelevant to this matter and should not be admissible.

11  Defendant asserts Plaintiff flagrantly attempts to conduct a trial-within-a-trial of purported "me

12  too" evidence and such "me too" evidence is not admissible to suggest that because it is accused

13  of certain conduct in another action it must have committed the conduct in this action also.  Fed.

14  R. Evid. 404(b).   Allowing Mr. Gonzales to testify in this action would require Praxair to

15  introduce evidence of the massive differences in the two cases, and Defendant asserts, most

16  importantly, Mr. Gonzales does not have any firsthand knowledge of Defendant's policies and

17  procedures as they applied to Plaintiff's employment.

18       Defendant also argues that disputed testimony Plaintiff wants to offer from Gonzales

19  regarding being on-call at multiple facilities is not only irrelevant to whether Plaintiff's alleged

20  on-call requirements were restrictive, but speculative hearsay that is unduly prejudicial, and

21  reference to Mr. Gonzales' lawsuit and the allegations therein would fall squarely within the

22  hearsay prohibition because Plaintiff would only introduce Mr. Gonzales's allegations in this

23  action to prove the truth of the matters asserted therein – that there have been other wage and hour

24  complaints about Defendant and/or that Defendant engaged in the misconduct alleged by Mr.

25  Gonzales.

26       The parties dispute whether Mr. Gonzales' employment was similar to Plaintiff's.

27  Defendant argues in this action, for all intents and purposes, Plaintiff and Mr. Gonzales may have

28  worked in two different universes.  Specifically, Defendant proffers Mr. Gonzales worked for

1   Defendant from approximately May 2, 2012, through March 2017, and primarily serviced three

2   different plants at two sites: two 120 kcfh XL vacuum-pressure-swing adsorption ("VPSA")

3   plants for a cementing company client in Mojave, California, and a high-purity-nitrogen

4   producing plant at a client's solar-energy operation in Sylmar, California.  (Gonzales Dep. 21:4-

5   10; 21: 11 – 22:11, 23:11- 22.)   By contrast, Defendant contends the Chowchilla Plant that

6   Plaintiff serviced had only one VPSA plant, which was smaller and rated lower (90 kcfh) than the

7   other plants that Mr. Gonzales serviced.  (Id. at 37:2-8.)  As a practical matter, the plant output,

8   geographic location, and average temperature of the plant's surroundings also rendered the

9   maintenance and service required by the Chowchilla Plant different from the other plants that Mr.

10  Gonzalez serviced.  (Id. at 79:1-23.)  Defendant again thus argues Mr. Gonzales does not have

11  any firsthand knowledge of Defendant's policies, procedures, and practices as they applied to

12  Plaintiff's employment, because the two had different jobs, at different sites, separated by hours

13  of travel by car.  (Gonzales Dep. 34:15- 18.)

14      Defendant highlights that Mr. Gonzales never worked with Plaintiff at the Chowchilla

15  Plant, and while Mr. Gonzales testified that he had to go to the Chowchilla plant to cover for

16  Plaintiff when Plaintiff was not available, Mr. Gonzales maintains that Plaintiff never covered for

17  him.  (Gonzales Dep. 33:2-34:9, 60:16-23 ("I'd never even worked with [Plaintiff] at that facility

18  [the Chowchilla Plant]").)   Thus, Defendant argues given the vast differences between the

19  employment experiences of Plaintiff and Mr. Gonzales, and the fact that Mr. Gonzales maintains

20  that the two never worked together, the sole reason for Plaintiff to introduce evidence regarding

21  Mr. Gonzales is to persuade the jury that if other employees have brought lawsuits against

22  Defendant, then Plaintiff's claims must have merit.

23      **b.      Plaintiff's Position**

24      Plaintiff responds that Isaiah Gonzalez held the same job as Plaintiff; Standard Plant

25  Technician at Praxair for close to five years, and left Praxair's employ on good terms.  Plaintiff

26  proffers that Jason Lucas – who managed both Mr. Garcia and Mr. Gonzales – confirmed the two

27  held the same position and were held to the same standards.  (Lucas Dep. 13:21-16:7, 16:24-

28  17:17, 18:5-18, 20:3-21:23; 77:7-9.)   Plaintiff states that Mr. Gonzales worked at the Praxair

1  Chowchilla Plant so he covered the same position, though at a different point in time, as Praxair

2  acknowledges Mr. Garcia was the only employee staffed at that plant.  (Pl.'s Opp'n 4, citing

3  Def.'s Mot. at 1:15-16; Gonzales Dep. 21:4-23:6, 32:4-23.)  Thus, Plaintiff contends this is not a

4  "me too" case where facts differ as Praxair contends, but rather the facts are "apples to apples"

5  regarding the shared experience with the on-call work requirement at Praxair.

6       Plaintiff emphasizes that Mr. Gonzales signed his declaration on August 24, 2019 and was

7  deposed on November 20, 2019 – before he filed any lawsuit.  Finally, Plaintiff contends that

8  Defendant did not attach Mr. Gonzales' declaration to its motions because it did not want this

9  Court to see that the on-call requirement made him unable to commit to social plans, miss family

10  events and return to the plant – one time at 2:00 a.m. – to attend to Praxair business; Mr. Gonzales

11  questioned Praxair's on-call requirement and was told things like you are "on-call" but not really

12  "on call," and if someone questioned the 24/7 on-call requirement, they would be put on an

13  "Action Plan" that would lead to additional job duties which were not possible to complete and

14  then to discipline, including termination.

15       Plaintiff argues that while these facts are very bad for Praxair, they are admissible, not

16  prejudicial, can be questioned on cross-examination, and in fact, to preclude them would be

17  prejudicial to Plaintiff.

18       **c.    The Court's Ruling**

19       Generally speaking, evidence of other lawsuits against a defendant is admissible where

20  relevant and offered for a proper purpose under Rule 404(b).  Jackson v. Fed. Express, No.

21  CV1001760MMMCWX, 2011 WL 13268074, at *2 (C.D. Cal. June 13, 2011) ("To determine if

22  such evidence is admissible, courts scrutinize the prior lawsuits to determine if they have a nexus

23  to the allegations plaintiffs have made, whether the plaintiff in the earlier suit worked in the same

24  or a similar office, whether he or she had similar duties, whether he or she was discharged for a

25  similar reason, and whether his or her allegations of wrongful conduct parallel those of

26  plaintiffs.").  As for any relevance of the lawsuit filed by Mr. Gonzales, Plaintiff has not

27  established that evidence of other lawsuits or litigation is relevant to any material facts in this

28  lawsuit, and testimony or evidence regarding Mr. Gonzales' litigation is irrelevant and unfairly

1    prejudicial.  McLeod v. Parsons Corp., 73 F. App'x 846, 854 (6th Cir. 2003) ("Here, it is not

2    apparent that evidence concerning the other employment discrimination lawsuits filed against

3    Parsons was relevant, because there was no clear nexus between these lawsuits and this case.  The

4    employees who filed these actions worked at several different offices, and were discharged for a

5    variety of reasons. Additionally, the potential for prejudice that would have accompanied this

6    evidence would have substantially outweighed its probative value, and this evidence would have

7    misled the jury."); Ricks v. Matayoshi, No. CV 16-00044 HG-KSC, 2017 WL 1363306, at *2 (D.

8    Haw. Apr. 12, 2017) (finding evidence of other lawsuits irrelevant and unfairly prejudicial).

9            Evidence that is irrelevant or has a probative value that is substantially outweighed by the

10   danger of unfair prejudice may be precluded from admission.  Fed. R. Evid. 402; 403.  Whatever

11   limited relevancy or probative value of Mr. Gonzales' testimony concerning the other litigation is

12   substantially outweighed by the danger of unfair prejudice and confusing the issues in this matter.

13   Buonanoma v. Sierra Pac. Power Co., No. 3:04-CV-0077-LRH-VPC, 2010 WL 3724254, at *5

14   (D. Nev. Sept. 16, 2010) ("Additionally, the court notes that other employment discrimination

15   complaints and lawsuits by other SPPC employees, although relevant to Buonanoma's claim for

16   age and gender discrimination, is 'substantially outweighed by the danger of unfair prejudice'

17   against SPPC . . . Introducing evidence of other lawsuits against SPPC could unfairly bias the jury

18   against SPPC for discriminatory acts that did not take place in this case and confuse the jury into

19   thinking it could hold SPPC liable in this action for alleged wrongs in other actions."); W. Air

20   Charter, Inc. v. Schembari, No. LACV17420JGBKSX, 2019 WL 6998769, at *5 (C.D. Cal. Jan.

21   11, 2019) ("The Court finds that evidence of the Sojitz Lawsuit has no likelihood of proving any

22   material facts relevant to Plaintiff's claims and would be highly prejudicial, as it could mislead

23   the jury, confuse the legal issues relevant to the [] dispute before them, and cause undue delay.").

24           This is not the case where the presence of a lawsuit itself is directly relevant to the claims

25   at hand, or for another specifically identified and relevant reason, such as to show bias of

26   potential witnesses.  See Actuate Corp. v. Aon Corp., No. C 10-05750 WHA, 2012 WL 2285187,

27   at *1 (N.D. Cal. June 18, 2012) ("Evidence of other lawsuits may be admissible to show financial

28   bias for Actuate witnesses who received or will receive a commission based on the outcome of

1   this and other lawsuits. Foundation must first be laid that these witnesses will receive a

2   commission based on the outcome of this lawsuit before evidence of other Actuate lawsuits is

3   relevant. Evidence of other lawsuits may also be relevant if Actuate has taken inconsistent

4   positions on similar contractual terms in other lawsuits."); Shenon v. New York Life Ins. Co., No.

5   218CV00240CASAGRX, 2020 WL 1317722, at *5 (C.D. Cal. Mar. 16, 2020) ("The Court agrees

6   that evidence related to NYL's handling of other claims and lawsuits could be relevant to show a

7   pattern of NYL's claim handling process that is related to Shenon's bad faith claim . . . Moreover,

8   in the absence of any particular evidence targeted for exclusion, it is premature to decide whether

9   the proffer of such evidence, even if relevant, would be substantially more prejudicial than

10  probative.").

11      At the hearing, the Court explored the relevance of the testimony of Mr. Gonzales to this

12  action, and to what extent the fact of the other litigation should be admitted or if any limited

13  testimony apart from the lawsuit was warranted.  As discussed at the hearing, Plaintiff seeks to

14  introduce evidence obtained prior to the time Mr. Gonzales filed his lawsuit, limited to testimony

15  specific to the shared experience of working as an on-call site technician for Praxair.  However, as

16  Defendant correctly emphasizes, *any* introduction of testimony by Mr. Gonzales would then be

17  properly countered by Defendant's proffering of the fact that Mr. Gonzales has other litigation

18  ongoing against Defendant.

19      Plaintiff contends that Jason Lucas – who managed both Mr. Garcia and Mr. Gonzales –

20  "confirmed the two held the same position and were held to the same standards."  The Court has

21  reviewed this testimony, and specifically, Mr. Lucas testified that they held a "similar position,"

22  but Mr. Gonzales served over more plants, that their title was both "Standard Plant technician, but

23  there's different levels, and Mr. Gonzalez was one or two steps above where Mr. Garcia was,"

24  and levels were determined by things such as time with the company, experience, and

25  performance evaluations.  (Lucas Dep. 17:4-7, 18:5-18.)  In describing a job summary introduced

26  as an exhibit, Mr. Lucas states that he worked in drafting the summary and that "we wanted to

27  keep this summary or job scope similar everywhere in the United States, so I would work with my

28  boss to make sure it was in line with what we were saying across the United States and what the

job required."  (Lucas Dep. 20:3-25.)

The Court acknowledges there may be specific aspects of the testimony or evidence that is relevant to both lawsuits, as there does appear to be a legitimate argument by Plaintiff supported by deposition testimony concerning the similarity of the positions.  See Pom Wonderful LLC v. Tropicana Prod., Inc., No. CV0900566DSFCTX, 2010 WL 11519185, at *4 (C.D. Cal. Nov. 1, 2010) ("The Court agrees that the mere existence of the other lawsuits is not relevant to any issue in this case.  However, there is no reason to exclude evidence adduced in other cases if that evidence is also relevant to an issue in this case.  For example, certain admissions made by Pom in other cases could be relevant in this case.  Admission of such allegedly relevant evidence will be decided on an individual basis during the trial.").

Based on the deposition testimony and the Defendant's own description of the position above, the Court is not convinced by Defendant's argument that Mr. Gonzales and Plaintiff may have worked in "different universes," and such statement appears to overstep.  The positions may be closer to an "apples to apples" situation as Plaintiff proffers, though perhaps more akin to a comparison of a Fuji apple to a Granny Smith apple.

As discussed at the hearing, Plaintiff submits that Mr. Gonzales' testimony is necessary in supporting Plaintiff's wage and hour claims, and specifically needed to counter any argument from Defendant that Plaintiff's position was not an on-call 24/7 position.  The Court finds this could be a legitimate purpose for such issue if contested at trial.  The Court also finds the introduction of Mr. Gonzales as a witness for such purpose would necessarily create a mini trial-within-a-trial concerning Mr. Gonzales' potential bias given the other litigation, and the testimony would create the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.   Fed. R. Evid. 403; Buonanoma, 2010 WL 3724254, at *5; W. Air Charter, Inc., 2019 WL 6998769, at *5.

Thus the Court is inclined to grant the motion to exclude, but with certain caveats.  The Court agrees with Defendant that Mr. Gonzales does not have direct personal knowledge of the procedures and policies of Defendant as specifically or actually applied to Plaintiff.  However, given the potential relevance concerning the issue of an on-call 24/7 position, if Plaintiff proffers

1    evidence that the position was an on-call 24/7 position, and Defendant disputes this fact with their

2    own evidence or otherwise, and the issue becomes disputed issue at trial, the Court will reconsider

3    this issue and potentially allow Plaintiff to offer testimony from Mr. Gonzales.  Otherwise, if this

4    issue is undisputed, the presentation of this evidence becomes needlessly cumulative, and any

5    probative value would be substantially outweighed by the danger of unfair prejudice, confusing

6    the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

7    evidence.  Fed. R. Evid. 403.

8         Accordingly, Defendant's third motion *in limine* to exclude the testimony of Isaiah

9    Gonzales shall be granted, subject to the caveats discussed herein.

10        4.    Testimony of Mandy Goins-Gonzales

11        Defendant's forth motion *in limine* seeks to preclude the testimony of Mandy Goins-

12   Gonzales because it lacks foundation, is not based on personal knowledge, and is impermissible

13   hearsay.  (Def.'s Mot. 21.)

14        a.    **Defendant's Position**

15        Defendants seek to exclude the testimony of Ms. Goins-Gonzales, the spouse of Isaiah

16   Gonzales, as her declaration shows that she has no personal knowledge of Plaintiff's employment

17   with Praxair, and any testimony she could proffer would be solely based on the observations of

18   her husband who did not work with Plaintiff.  Defendant asserts Ms. Goins-Gonzales' testimony

19   would be inadmissible speculation of what occurred during and following Plaintiff's employment.

20   Given her spouse, Mr. Gonzales, did not work with Plaintiff, any testimony which attempts to

21   communicate information related to Plaintiff's alleged wage and hour claims, including Plaintiff's

22   alleged on-call requirements, as opposed to Mr. Gonzales's own alleged on-call requirements,

23   would add an additional layer of (inadmissible) speculation to her testimony, as her testimony

24   would be based, at best, on a second-hand account of what Mr. Gonzales speculated allegedly

25   occurred during and following Plaintiff's employment.   This type of testimony likewise

26   constitutes inadmissible hearsay under Federal Rule of Evidence 802, insofar as her testimony

27   consists of out of court assertions being offered for the truth of the matters asserted. Therefore,

28   Ms. Gonzales's testimony should be precluded at trial.

1    **b.    Plaintiff's Position**

2    Plaintiff responds that the real reason Defendant seeks to exclude Mandy Goins-Gonzales

3    is the same as why Defendant seeks to exclude Isaiah Gonzales: Praxair does not want this court

4    to hear what Ms. Goins-Gonzales has to say about the 24/7 on-call requirement, and she will

5    testify, if necessary, that Mr. Gonzales' statements about the 24/7 on-call requirement interfered

6    with his ability to make family plans, including going to the zoo or camping, and that whenever

7    she hears an "old phone sound" ring she gets upset because it was the ring tone set on Mr.

8    Gonzales' Praxair-issued cell phone for his round the clock company calls.  Plaintiff submits that

9    Defendant did not attach Ms. Goins-Gonzales' declaration to its motions because it did not want

10   the Court to see the truth, and while these facts are very bad for Defendant, they are admissible,

11   not prejudicial, and can be questioned on cross-examination.

12   **c.    The Court's Ruling**

13   Federal Rule of Evidence 602 states that a witness may not testify about any matter unless

14   "evidence is introduced sufficient to support a finding that the witness has personal knowledge of

15   the matter."  Fed. R. Evid. 602.  Federal Rule of Evidence 701 provides that a lay witness may

16   only offer testimony in the form of an opinion limited to one: "(a) rationally based on the

17   witness's perception; (b) helpful to clearly understanding the witness's testimony or to

18   determining a fact in issue; and (c) not based on scientific, technical, or other specialized

19   knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  " 'A lay witness's opinion

20   testimony necessarily draws on the witness's own understanding, including a wealth of personal

21   information, experience, and education, that cannot be placed before the jury[,]' . . . [b]ut a lay

22   opinion witness 'may not testify based on speculation, rely on hearsay or interpret unambiguous,

23   clear statements.' "  United States v. Lloyd, 807 F.3d 1128, 1154 (9th Cir. 2015) (first quoting

24   United States v. Gadson, 763 F.3d 1189, 1208 (9th Cir. 2014), then quoting United States v. Vera,

25   770 F.3d 1232, 1242 (9th Cir.2014)).

26   Whatever attenuated and limited probative value to this action that the testimony may

27   offer is dwarfed by the lack of direct personal knowledge as to the dispute between the Plaintiff

28   and Defendant in this action, the speculative nature of the testimony as to the witness's

1   perceptions of a phone ring tone and its basis in offering testimony as to the precise contractual

2   employment agreement and the procedures underlying the agreement between this Plaintiff

3   Garcia and Defendant, and the potential to create a mini trial-within-a-trial that would serve no

4   benefit to the jury or adjudication of this action.  The bulk of the proffered testimony of this

5   witness is simply evidence that is only directly relevant to the litigation involving Mr. Gonzales,

6   not this action.  Given no personal knowledge or interaction with Plaintiff as related to the claims

7   against Defendant, any limited probative value as it relates to this witness is substantially

8   outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue

9   delay, wasting time, or needlessly presenting cumulative evidence.   Fed. R. Evid. 403;

10  Buonanoma, 2010 WL 3724254, at *5; W. Air Charter, Inc., 2019 WL 6998769, at *5.

11      Even if the Court were to admit the testimony of Mr. Gonzales under the limited

12  circumstances as discussed above, the testimony of Ms. Goins-Gonzales would only be a

13  cumulative presentation of evidence regarding the 24/7 on-call aspect of Mr. Gonzales's position.

14  This cumulative aspect only adds to the impropriety of allowing this speculative testimony not

15  based on personal knowledge of the primary disputes before a jury.

16      Accordingly, Defendant's motion to exclude the testimony of Ms. Goins-Gonzales shall

17  be granted.

18      5.      Declarations of Mr. Gonzales, Ms. Goins-Gonzales, and Drs. Bianchi and Chauhan

19      In Defendant's fifth motion *in limine*, Defendant seeks to exclude the declarations of

20  certain witnesses, proffering the prior testimony was unreliable, and that Plaintiff is planning on

21  submitting declarations in lieu of live testimony.  (Def.'s Mot. 22.)

22      a.      **Defendant's Position**

23      Defendant asserts that Plaintiff has introduced declarations in this action, including those

24  of Mr. Gonzales, Ms. Goins-Gonzales, and Dr. Bianchi ,and Dr. Chauhan, that were drafted by

25  Plaintiff's counsel, and Plaintiff has not ruled out the prospect of attempting to substitute these

26  declarations for live testimony at trial.  Defendant argues the declarations are inadmissible

27  hearsay; contain statements inconsistent with the witnesses' deposition testimony; are proven

28  unreliable and untrustworthy; and therefore, the witnesses must be present at trial for examination

1  and the declarations available for the purposes of impeachment.

2       Defendant contends the declarants' deposition testimony with respect to the background

3  and context for the declarations directly impeaches, or at least significantly couches, the

4  representations therein.  Defendant directs the Court to deposition testimony of Isaiah Gonzales

5  stating Plaintiff's counsel "said she would depose me if I wouldn't sign the statement," and that

6  after Plaintiff's counsel ultimately sent Mr. Gonzales a draft declaration, which he signed after

7  making changes, he stated "would have said [certain statements] differently" than how Plaintiff's

8  counsel portrayed those statements in the declaration.  (Def.'s Mot. 22-23.)[5]  Defendant also

9  contends Dr. Chauhan completely impeached his declaration testimony at deposition.

10      For these reasons, Defendant argues, to allow introduction of the declarations would run

11  afoul of the central justification for disallowing hearsay of safeguarding against the introduction

12  of unreliable statements.  Therefore, Defendant requests the Court require these witnesses be

13  present at trial for direct and cross-examination where their declarations would then be admissible

14  for the purposes of impeachment.

15      **b.    Plaintiff's Position**

16      Plaintiff responds that Defendant's motion is unnecessary because Plaintiff does not

17  intend to offer the declarations in lieu of live testimony, but reserves the right to introduce the

18  declarations with the witnesses to use to either refresh the witness's recollection or admit the

19  document as past recollection recorded.  Plaintiff also reserves the right to use the declaration if

20  the declarant is unavailable to testify, which Plaintiff's counsel currently does not foresee as an

21  issue here, but given the delays in scheduling a trial submits it may become an issue.  Plaintiff

22  also submits that Rule 807(a)(1) applies because Defendant will have the opportunity to examine

23

---

24  [5]  Here, Mr. Gonzales states: "And it came down to either sign a statement, or she would depose me.  So I  expected
     to hear something from that because she would depose me if I wouldn't sign the statement."  (Gonzalez Dep. 14:1-4.)

25  When then asked: "Did she have a statement ready for you, or did she provide you with a statement during
     conversation?" Mr. Gonzales responded: "No, she didn't provide me with a statement.  The Statement – there was no

26  statement involved for quite some tine, until – until later on."  (Gonzalez Dep. 14:5-10.)  When asked whether he
     made any changes to the declaration, Mr. Gonzales answered: "I did make a few minor changes to the declaration, to

27  begin with; however, when I emailed it to her – I signed it and emailed it to her.  And they were really quite minor
     changes, just may like 'I would have said it differently' type of thing."  (Gonzalez Dep. 16:20-24.)  If the declarations

28  is proffered to be admitted in lieu of live testimony, the Court can further explore the issue of whether this was
     improper.

1  the witnesses and the statements made in their declarations providing a "sufficient guarantee of
2  trustworthiness," and thus, "Defendant's sole reason for excluding the declarations as hearsay is
3  not well-taken under the circumstances for which the declaration will be used at this trial." (Pl.'s
4  Opp'n 6.)

5  **c.    The Court's Ruling**

6  First, given the Court's ruling above concerning the testimony of Mr. Gonzales and Ms.
7  Goins-Gonzales, any declarations offered that contain their testimony would be subject to the
8  Court's ruling above excluding the testimony of Ms. Goins-Gonzales, and the specific limited
9  circumstances under which the Court stated Mr. Gonzales's testimony could be relevant or
10  admitted.

11  Given Plaintiff's position is that they do not anticipate witnesses to be unavailable, the
12  Court shall deny this motion, without prejudice.  The motion is premature at this junction given
13  the potential witnesses have not been proffered to be unavailable.  Thus, the evidence sought to be
14  excluded in this instance is not accurately and efficiently evaluated in a motion *in limine* and it is
15  necessary to defer ruling until during trial.  Jonasson, 115 F.3d at 440.  The Court will determine
16  the admissibility of specific declarations if and when a witness is proffered to be unavailable and
17  the dispute is more properly before the Court for consideration.

18  Accordingly, Defendant's fifth motion *in limine* shall be denied without prejudice to
19  renewal at trial if Plaintiff makes an effort to utilize these depositions without live presentation of
20  the witnesses at trial.

21  **6.    Plaintiff's Medical Records and Work Restriction Notices**

22  Defendant's sixth motion *in limine* seeks to prevent Plaintiff from introducing, without
23  foundation and an opportunity to respond, medical records and work restrictions for the truth of
24  the matter asserted therein.  (Mot. 23.)

25  **a.    Defendant's Position**

26  Defendant proffers they bring this motion as related to the previous motion, and out of an
27  abundance of caution, to obtain an instruction from the Court preventing Plaintiff from
28  introducing Plaintiff's medical records and work restrictions for the truth of the matter asserted

48

1  therein, without providing the opportunity for Defendant to lay proper foundation for, and

2  conduct examination of the treatment providers in front of the jury.  Defendant contends that it is

3  prudent to address this matter specifically in light of the COVID-19 pandemic and rising

4  infections, as to include these documents without the opportunity for Defendant to conduct live

5  examination of the providers who created these documents would be inadmissible hearsay and no

6  hearsay exception exists.

7        **b.    Plaintiff's Position**

8        Plaintiff responds he never intended on providing medical records in a vacuum, and given

9  Defendant has declined to specify which medical records it wishes to exclude, limits the

10 discussion to medical records he may introduce to show he was able to return to work with

11 restrictions prior to his termination.  (Pl.'s Opp'n 6-7.)  Plaintiff proffers Dr. Bianchi was his only

12 treating physician before Defendant terminated his employment, is on Defendant's witness list

13 and expert disclosure, and created medical records that were provided to Defendant outlining

14 Plaintiff's then current medical restrictions until his termination.  Plaintiff thus submits these are

15 no doubt relevant records and Defendant does not argue contrary.

16       Plaintiff argues the records are admissible as they fall into an exception to the hearsay rule

17 under Rule of Evidence 803(4).  Plaintiff further argues that Dr. Bianchi will authenticate these

18 records and therefore Defendant will have an opportunity to cross examine him, making the

19 records also admissible under Rule 807.

20       **c.    The Court's Ruling**

21       As for Plaintiff's hearsay argument, perhaps some of the contents of the medical reports

22 concerning Plaintiff's reporting of symptoms or other statements made by Plaintiff may be

23 admissible pursuant to the hearsay exception cited by Plaintiff.  See Fed. R. Evid. 803(4) ("The

24 following are not excluded by the rule against hearsay, regardless of whether the declarant is

25 available as a witness: . . . A statement that: (A) is made for--and is reasonably pertinent to--

26 medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or

27 sensations; their inception; or their general cause.").  However, the exception is limited to the

28 statements made *by* Plaintiff as patient.  Bulthuis v. Rexall Corp., 789 F.2d 1315, 1316 (9th Cir.

1  1985) ("Rule 803(4) applies only to statements made by the patient to the doctor, not the
2  reverse.").

3       However, given Plaintiff's position is that they do not anticipate witnesses to be
4  unavailable, for similar reasons as the Court's denial of the previous motion, the Court shall deny
5  this motion, without prejudice.  The motion is premature at this junction given the potential
6  medical witnesses have not been identified or proffered to be unavailable.  For these reasons, the
7  evidence sought to be excluded in this instance is not accurately and efficiently evaluated in a
8  motion *in limine* and it is necessary to defer ruling until during trial.  Jonasson, 115 F.3d at 440.
9  The Court will determine the admissibility of specific medical records or work restrictions if and
10 when a witness is proffered to be unavailable and the dispute is more properly before the Court
11 for consideration.

12      Accordingly, Defendant's sixth motion *in limine* shall be denied without prejudice to
13 renewal at trial.

14      7.    Workers' Compensation Third Party Administrator's Denials of Treatment and/or
             Alleged Delays in Approving Treatment
15

16      Defendant's seventh motion *in limine* seeks to preclude Plaintiff from introducing
17 evidence of denials of treatment or alleged delays in approving treatment by the third party
18 administrator.

19      a.    **Defendant's Position**

20      Defendant introduces this motion by stating it is confident Plaintiff cannot establish
21 Defendant failed to engage or was responsible for an unlawful breakdown of the interactive
22 process as Plaintiff's own admissions and undisputed evidence shows Defendant engaged in a
23 thorough exchange over nine months.  (Mot. 24.)  However, other individuals, including several
24 treatment providers and Plaintiff's spouse, interacted with Plaintiff during the time period
25 following his injury.  For example, in March of 2017, Defendant determined it might be able to
26 temporarily accommodate Plaintiff provided a plan was put in place, and proceeded to schedule
27 an appointment with a physician to confirm Plaintiff's ability to return – but due to confusion on
28 the part of the doctor, the doctor initially turned plaintiff away from the appointment.  Plaintiff

then spoke to an employee of Defendant who investigated and responded to Plaintiff with next steps a few days later, but in that brief period, rescheduling of the appointment was rendered moot as on March 24, 2017, another of Plaintiff's care providers recommended inpatient treatment.

Defendant states it brings this motion because it anticipates these periods of disconnect between the various parties will be prejudicially imputed to Defendant, which would confuse and mislead the jury as to Defendant's obligations in participating in the interactive process.

### b.    Plaintiff's Position

Plaintiff responds that Defendant "cannot have its cake and eat it too," as Defendant tries to contend that Plaintiff was constantly changing in treatment and therefore Defendant could not accommodate Plaintiff. Defendant required Plaintiff to be 100% healed before it returned him to work and Plaintiff argues he would have been approved to return to work but for Defendant's refusal to return Plaintiff to work unless he was 100% healed. Plaintiff also contends Defendant delayed treatment which exacerbated injuries, relevant to show Defendant did not engage in the interactive process in good faith, but rather violated California law and caused further damage to Plaintiff.

### c.    The Court's Ruling

Motions *in limine* that exclude broad categories of evidence are disfavored, and such issues are better dealt with during trial as the admissibility of evidence arises. Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). While Defendant identifies one instance where there may have been a delay due to no fault of Defendant, a request to exclude evidence of denials of treatment or alleged delays in approving treatment by the third party is too broad of an exclusion of evidence that appears to be relevant to painting the picture as a whole of Plaintiff's experience and Defendant's experience during the interactive process, including both parties' interactions with third parties during the process. To the Court, the evidence concerning a delay caused by the third-party could potentially absolve the Defendant of some fault in the eyes of the jury, and rather than exclude all such evidence at this juncture, the Court finds it more appropriate to weigh the specific evidence sought to be excluded at the time when more foundation is laid and the potential impact can better be determined. The evidence sought to be

1   excluded in this instance is not accurately and efficiently evaluated in a motion *in limine* and it is

2   necessary to defer ruling until during trial.  Jonasson, 115 F.3d at 440.

3     Accordingly, Defendant's seventh motion *in limine* shall be denied without prejudice to

4   renewal at trial.

5     8. Drafts of Letters to Plaintiff

6     Defendant's eighth motion *in limine* seeks to preclude evidence of letters in draft form,

7   written by Defendant's agents or employees, that were never sent in such form to Plaintiff.

8   (Def.'s Mot. 25.)

9     **a.** **Defendant's Position**

10    Defendant emphasizes that Plaintiff's work status fluctuated drastically during the nine

11  months that he was on leave following his industrial accident, and a large team of individuals

12  weighed in after receipt of, and in response to, Plaintiff's status updates to evaluate

13  accommodation.  At times, correspondence was drafted to Plaintiff which was revised before it

14  was sent out due to what Defendant states was Plaintiff's frequently changing work status.  Many

15  of these letters were introduced at the deposition of Melissa Angelovski, who testified that she

16  drafted several letters for consideration and review by others during the course of communicating

17  with Plaintiff.  However, without having seen final signatures on the letters, Ms. Angelovski

18  could not represent whether they were drafts.[6]  Defendant contends that to allow introduction of

19  the draft letters would be error, proffering three primary arguments.

20    First, Defendant contends that the draft letters lack foundation and violate the best

21  evidence rule.  Although the letters were written in large part by Ms. Angelovski, they were

22  revised by others within the organization and Defendant contends Angelovski is not competent to

23  authenticate drafts of letters authored by multiple individuals which are not self-authenticating.

24  Fed. R. Evid. 901, 902.  Defendant argues introduction of the letter drafts would violate the best

25  evidence rule because the letters were written electronically and revised by multiple individuals

---

26  [6]  Angelovski testified as the person most qualified on behalf of Defendant.  (ECF No. 53-1 at 103.)  When asked

27  whether she wrote a letter introduced at the deposition as Exhibit 16, Angelovski stated: "I don't know if this was the
  exact letter I sent, but yes, this was a version.· There was -- part of·my job is to draft letters, and without having the
  signature, I don't know if this is the exact letter I·sent. [. . . ] But I recall this being a version of the letter that was

28  mailed to him."  (Angelovski Dep. 153:16-24, ECF No. 53-1 at 104.)

1   on multiple occasions, and because Plaintiff cannot produce an original or copy of the letter drafts

2   he should not be allowed to present evidence of their content.  Fed. R. Evid. 1002 ("An original

3   writing, recording, or photograph is required in order to prove its content unless these rules or a

4   federal statute provides otherwise.").

5        Second, Defendant argues that given Plaintiff intends to offer the documents for the truth

6   of the matter asserted, the draft letters are hearsay and not subject to any hearsay exception.  Fed.

7   R. Evid. 902.

8        Third, Defendant argues that even if relevant and not inadmissible hearsay, the drafts are

9   more prejudicial than probative and should be excluded under Rule 403.  Defendant contends that

10  evidence of the draft letters that were never sent to Plaintiff and do not reveal any secret or

11  nefarious information, but reflect the regularly changing nature of Plaintiff's work status, would

12  only confuse the issues and mislead the jury.  Defendant states the probative value of unsent

13  drafts have no probative value, and the confusion  to the jury would be highly prejudicial.

14  **b.    Plaintiff's Position**

15       Plaintiff responds that Defendant's motion appears to attempt to exclude letters or drafts

16  of letters "submitted to" Plaintiff concerning his employment, that two sets of draft letters exist

17  that are known to Plaintiff, and it appears Defendant only seeks to exclude one set of letters.

18  (Pl.'s Opp'n 8.)    Plaintiff proffers the  letter Defendant attempts to exclude concern

19  correspondence to Plaintiff on about August 29, 2017, threatening to terminate his employment,

20  and the letter is relevant to show Defendant's intention to terminate Plaintiff's employment as

21  early as August 2017, rather than engage in the interactive process.

22       Plaintiff also argues the letter is admissible non hearsay and that he will be able to

23  authenticate the letter and testify about its contents.  Specifically, Plaintiff contends this letter will

24  not be offered for the truth of the matter asserted but rather to show this was the first notice of

25  Defendant's intention to terminate Mr. Garcia's employment, and for the non hearsay reason of

26  how it affected Plaintiff and motivated his actions towards the company.[7]

27  ─────────────────────
    [7]  Plaintiff directs the Court to deposition testimony where Plaintiff confirmed that the document introduced as

28  Exhibit 22 at his deposition was received sometime in late August or early September (indicating year 2017 though
    not explicitly stated here), and when asked if this was the "first indication" that Praxair may terminate his

1   Plaintiff next discusses that Ms. Angelovski wrote a draft of a letter dated October 18,

2   2017, immediately following Plaintiff's announcement that he may be required to attend

3   additional treatment for thirty (30) days.[8]  Plaintiff argues this draft letter is relevant to highlight

4   Defendant's intent to terminate Mr. Garcia after learning about his additional treatment rather

5   than engage in the interactive process to find a reasonable accommodation, or continue his current

6   leave, and it is non hearsay because it goes directly to Defendant's intent to immediately

7   terminate the employment.  Fed. R. Evid. 803(3).

8        **c.    The Court's Ruling**

9        Given the parties' briefing was somewhat unclear as to whether Plaintiff is seeking to

10  admit draft letters never sent to him as indicated in Defendant's briefing, and whether Defendant

11  is seeking to exclude draft letters that were in fact sent to Plaintiff, the Court inquired into this

12  issue at the hearing.

13       Defendant does not raise any attorney-client privilege issue with the draft letter, though

14  the Court notes when the October 2017 draft letter was discussed at deposition and Angelovski

15  was asked why the letter wasn't sent out to Plaintiff, counsel did interject and stated "I'm just

16  going to clarify, don't divulge any correspondence or communications you may have had with

17  counsel." (Angelovski Dep. 178:20-25.)

18       As for foundation and authentication, the Court agrees with Plaintiff that the letters

19  introduced as Exhibit 22 at Plaintiff's deposition, and introduced as Exhibit 23 at Angelovski's

20  deposition, have been properly authenticated.  "An original writing, recording, or photograph is

21  required in order to prove its content unless these rules or a federal statute provides otherwise."

22  Fed. R. Evid. 1002.  The Court does not find exclusion is warranted under the best evidence rule.

23  _____

24  employment, Plaintiff answered: "No," then when asked it if was the first time Praxair had said or written anything that Plaintiff had received which indicated there was a possibility of terminating his employment, Plaintiff answered: "Yes." (Garcia Dep. 147:13-148:9.)

25  [8]  Here, the deposition testimony cited by Plaintiff is of Ms. Angelovski concerning when Praxair decided to

26  terminate Plaintiff's employment, and Angelovski stated the time period discussed "was the start of the conversation to determine. So it's not like on this specific day that's when we decided.  It was information we received that we

27  started to evaluate to determine if we can accommodate this new request that Mr. Garcia presented to us." (Angelovski Dep. 177:3-178:7.)  A document was then introduced as Exhibit 23, and Angelovski answered that the

28  document was a letter drafted by Angelovski, though she did not recall if the letter was ever sent out to Plaintiff. (Angelovski Dep. 178:8-16.)

54

Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."); United States v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004) ([T]he rule does apply when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself-particularly when the witness was not privy to the events those contents describe.")

This is not the case where only oral testimony is offered in lieu of even a copy of a written document or other better evidence. Bennet, 363 F.3d at 953 ("First, the GPS display Chandler saw was a writing or recording because, according to Chandler, he saw a graphical representation of data that the GPS had compiled about the path of Bennett's boat . . . Second, Chandler never actually observed Bennett's boat travel the path depicted by the GPS[.]   Thus, Chandler's testimony concerned the 'content' of the GPS, which, in turn, was evidence of Bennett's travels . . . At oral argument, the government admitted that the GPS testimony was offered solely to show that Bennett had come from Mexico. Proffering testimony about Bennett's border-crossing instead of introducing the GPS data, therefore, was analogous to proffering testimony describing security camera footage of an event to prove the facts of the event instead of introducing the footage itself . . . This is precisely the kind of situation in which the best evidence rule applies."); Medina v. Multaler, Inc., No. CV0600107MMMAJWX, 2007 WL 5124009, at *1 (C.D. Cal. Feb. 7, 2007) ("A best evidence objection is particularly appropriate where, as here, the alleged writer of the original document does not acknowledge the document's existence [as] Pontacq's assertion that he does not remember writing such an email, combined with Medina's inability to produce the email, triggers both of the evidentiary concerns that underpin the best evidence rule, i.e., 'guard[ing] against incomplete or fraudulent proof,' and preventing inaccuracies that necessarily occur when witnesses are asked to recollect the specific words of a document.") (citation omitted).

Given we have a properly authenticated duplicate of each document, no genuine question raised about the original's authenticity, nor other circumstances that make it unfair to admit, the Court finds no clear basis to exclude the draft letters under the best evidence rule at this juncture.

1 Fed. R. Evid. 1003.

2      Plaintiff responds to Defendant's hearsay argument by citing Rule 803(3) which provides

3 the following hearsay exception: "A statement of the declarant's then-existing state of mind (such

4 as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling,

5 pain, or bodily health), but not including a statement of memory or belief to prove the fact

6 remembered or believed unless it relates to the validity or terms of the declarant's will."  Fed. R.

7 Evid. 803(3).   However, the Court is not convinced at this stage by Plaintiff's proffer this

8 provision applies.   See United States v. Faust, 850 F.2d 575, 585–86 (9th Cir. 1988) ("The

9 circumstances in this case allowed Faust to think long and hard before drafting the letter.  Indeed,

10 the fact that Faust went through several drafts indicates that he had ample time to reflect upon his

11 statements.  Thus, any evidence provided by the letter was unreliable, and the court did not abuse

12 its discretion in excluding it.").[9]

13      Draft letters may be relevant and can be introduced as evidence depending on the specific

14 facts surrounding the evidence and reason for introducing.  The Court recognizes that allowing a

15

16 [9]  The Ninth Circuit held:

17     Hearsay is admissible if it is a statement of the "declarant's then existing state of mind."  Fed. R.
18     Evid. 803(3).  In order to determine admissibility under this rule a court must examine three
    factors: contemporaneousness, chance for reflection, and relevance.  United States v. Ponticelli,
19     622 F.2d 985, 991 (9th Cir.), cert. denied, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980).
    Contemporaneousness is disputed.  Depending on whose version of the facts is believed, Faust
20     either drafted the letter soon after he was allegedly blackmailed into signing and postdating the
    endorsement or long after he had originally signed the endorsement.  Although the evidence may
21     be relevant in light of the fact that Faust was allowed to testify to all the facts contained in the
    letter, the draft itself was cumulative and its probative value slight.

22     Faust's opportunity to reflect in drafting the letter, however, weighs heavily against admission.
23     Rule 803(3) is related to the exceptions created by Rules 803(1) and (2), which allow statements
    of present sense impression and excited utterances.  See Ponticelli, 622 F.2d at 991; Fed. R. Evid.
24     803(1), (2).  The theory behind all three exceptions is that "[t]he greater the circumstances for
    misrepresentation, the less reliable is the declaration."  Ponticelli, 622 F.2d at 991. The
25     circumstances in this case allowed Faust to think long and hard before drafting the letter.  Indeed,
    the fact that Faust went through several drafts indicates that he had ample time to reflect upon his
26     statements.  Thus, any evidence provided by the letter was unreliable, and the court did not abuse
    its discretion in excluding it.  Furthermore, given the fact that Faust was allowed to testify
27     extensively about the content of the letter and his state of mind, we do not find that the admission
    of the letter would more likely than not have affected the verdict.  See [United States v. Emmert,
    829 F.2d 805, 808 (9th Cir. 1987)].

28 Faust, 850 F.2d at 585–86.

1  draft letter circulated through the company during a time when Plaintiff's status was apparently in

2  flux and there were multiple agents or employees involved in the drafting and discussion, may

3  lead to confusing or misleading the jury, and be unfairly prejudicial to the Defendant.  However,

4  the Court is disinclined to exclude any draft letter at this juncture until more foundation is laid for

5  the evidence and the Court can consider the impact and importance of introduction of the letter in

6  the proper context.  Defendants have not shown that the documents inadmissible in this matter on

7  all potential grounds at this time.

8       Accordingly, Defendant's eighth motion *in limine* shall be denied without prejudice to

9  renewal at trial.

10      9.    Documents Relating to Potential Job Openings with Defendant

11      Defendant's ninth motion *in limine* seeks to preclude Plaintiff from offering evidence of

12  job openings with Defendant.  (Def.'s Mot. 27.)

13      a.    **Defendant's Position**

14      Defendant anticipates Plaintiff will argue the evidence is relevant to claims that Defendant

15  failed to make reasonable accommodations and failed to engage in the interactive process.

16  Defendant submits that Plaintiff has offered no evidence that: (1) he met the requirements for

17  consideration of any of the other purportedly available jobs; (2) Plaintiff could perform any of

18  these jobs with or without reasonable accommodation; (3) the jobs were available in the limited

19  time period he was cleared to return to work following his industrial accident; or (4) the jobs were

20  within a reasonable distance from his home, as many were actually hours car travel from

21  Plaintiff's residence.  (Def.'s Mot. 27.)  Defendant directs the Court to deposition testimony from

22  Plaintiff's expert indicating the list of jobs and job-related information were pulled from the

23  internet without consideration of any of the foregoing factors.  (Lloyd Dep. 10:12-13.)[10]

24  Defendant argues that use of such evidence under the circumstances is "near comical" because

25

---

26  [10]  In describing the documents relied upon, Lloyd identifies documents that were: "taken from a Website called
Zippia, and it provides information about various employers or companies.· And this is the information about Praxair.

27  Talks about jobs, the company, what it is.· What was relevant for me was it talks about how long on average different
people are at those particular employers.  It's a chance for employees to rate when there's information on the stocks,
it's kind of a catchall related to the company.· Again, what was relevant to me is average employment length of that

28  employer."  (Lloyd Dep. 10:12-21.)

1   had Defendant actually suggested that Plaintiff, in his then-state of health flux, move or commute

2   several hours away from home to perform a new job with no prior experience in the field, then

3   Plaintiff would be alleging that such evidence demonstrates Defendant failed to reasonably

4   engage in the interactive process.  Further, Defendant argues the purported open positions lack

5   foundation, are irrelevant, and introduction would serve to confuse the issues at trial, rendering

6   the documents more prejudicial than probative.

7        Last, Defendant contends that introduction of this evidence at trial would have the

8   secondary purpose of putting improper evidence of Defendant's relative size, wealth, and/or

9   financial condition in front of the jury, and evidence of a party's wealth and financial status is

10  inadmissible.  See Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1178 (11th Cir. 2002) ("The

11  general rule is that, during trial, 'no reference should be made to the wealth or poverty of a party,

12  nor should the financial status of one party be contrasted with the other's.' ") (quoting Batlemento

13  v. Dove Fountain, Inc., 593 So.2d 234, 241 (Fla. 5th Dist. Ct. App. 1991)).  Defendant argues that

14  allowing such information will also create a danger of unfair prejudice, confusion of the issues,

15  and will mislead the jury making it more prejudicial than probative.

16        **b.   Plaintiff's Position**

17        Plaintiff responds that Defendants have pointed to no job placement documents but rather

18  to a document relied upon by Plaintiff's expert, Mr. Lloyd, and the document Defendant is trying

19  to keep out, is a job posting from Praxair's own website showing openings in the Fresno area –

20  where Mr. Garcia lives – within months of his termination.  (Opp'n 9.)[11]  Plaintiff contends the

21  document is relevant in a disability discrimination case such as this, and notes that Defendant's

22  own motion concedes that "an employer's duty to engage in the interactive process and to make

23  reasonable accommodations *may* involve exploring reassignment to other positions."  (Def.'s

24  Mot. 27:7-9 (emphasis in original).)  Plaintiff argues if Defendant could not place him in his

25  Standard Plant Technician job, Defendant had an affirmative duty to locate or at least search for

26

27  [11]  The document cited to by Plaintiff appears to be show job listings on the Praxair website for two truck driver
    positions, one in Fresno, California area, and one in Stockton, California area, as well as a "Field Service Tech"
28  position in Fresno.  (Duckworth Dec.¶ 9, Ex. H, ECF No. 54-1 at 67-71.)  The document appears to have been printed
    on February 17, 2018, and bears Bates numbering of Garcia 330-334.  (Id.)

1   another placement before terminating him.

2       As to admissibility, Plaintiff proffers he will be able to authenticate this document as part

3   of his search for a job after Praxair terminated him, and "to the extent Defendant's motion was

4   really centered on the documents relied upon by Mr. Lloyd, their admissibility is addressed

5   above."[12]  (Opp'n 9.)

6       **c.    The Court's Ruling**

7       Defendant is correct that generally, it is improper to present information regarding a

8   party's relative size, wealth, or financial condition, to a jury.  However here, Plaintiff is not

9   simply or directly presenting evidence of the financial condition or size of Defendant, but rather,

10  information pertaining to open job positions that may be directly relevant to the reasonable

11  accommodation and interactive process that Defendant was legally required to complete.  Given

12  the precise information Plaintiff is seeking to admit and that Defendant is seeking to exclude was

13  unclear based on the parties' briefing, at the hearing, the Court inquired further into the necessity

14  for this motion.

15      At the hearing, the Court noted Defendant's motion appeared overly broad, but stated it

16  may be inclined to entertain a renewed motion at trial when the Court is presented with the

17  evidence in the proper context.  While the documents are sought to be introduced for the purpose

18  of showing jobs available at the time, the documents may also contain information irrelevant to

19  this purpose.  When presented with the documents and a renewed motion, the Court may require

20  redactions of irrelevant information consistent with the Rules of Evidence, and may consider the

21  need for a limiting instruction.  Based on the discussion at the hearing, Defendant submitted to

22  denying this motion without prejudice at this time.

23      Accordingly, Defendant's ninth motion *in limine* shall be denied without prejudice

24  / / /

25  / / /

26  / / /

---

27  [12]  It is not clear whether Plaintiff is referring to his briefing here as there appears to be no discussion of admissibility
28  of specific documents within Mr. Lloyd's report, or whether Plaintiff is referring generally to the Court's potential
    decision regarding Mr. Lloyd's testimony overall.

**IV.**

**CONCLUSION AND ORDER**

For the reasons discussed above, IT IS HEREBY ORDERED that:

1.      Plaintiff's motions *in limine* are GRANTED IN PART AND DENIED IN PART as follows:

     a.      Plaintiff's first motion *in limine* is GRANTED IN PART AND DENIED IN PART.  Defendant is precluded from offering any evidence that goes to the affirmative defense of undue burden that was not produced in discovery; and Defendant shall supplement its response to Request for Production No. 50 and identify those documents that were produced in discovery that go to the affirmative defense of undue burden within **fourteen (14) days** of the date of entry of this order.

     b.      Plaintiff's second motion *in limine* GRANTED IN PART and Defendant may not proffer expert testimony of Dr. Vaughn, and Dr. Chauhan may testify as an expert to the extent that his opinions were formed during the course of treatment.

     c.      Plaintiff's third motion *in limine* is GRANTED and Defendant is precluded from presenting evidence that Plaintiff was found to be "totally temporarily disabled."

     d.      Plaintiff's fourth and fifth motions *in limine* to preclude Dr. Mahala and Mr. Sarkisian from testifying as rebuttal experts at trial are DENIED without prejudice to be renewed at trial.

     e.      Plaintiff's sixth motion *in limine* to preclude evidence of workers compensation payments under the collateral source rule is GRANTED.

2.      Defendant's motions *in limine* are granted in part and denied in part as follows:

     a.      Defendant's first motion *in limine* to exclude Plaintiff's expert witness Mr. Lloyd is DENIED;

     b.      Defendant's second motion *in limine* to exclude evidence of the Cal-OSHA investigation and subsequent findings, appeals, citations, and remediation, is GRANTED, subject to the caveats discussed herein;

c.      Defendant's third motion *in limine* to exclude the testimony of Isaiah Gonzales is GRANTED, subject to the caveats discussed herein;

d.      Defendant's fourth motion *in limine* to exclude testimony of Mandy Goins-Gonzales is GRANTED;

e.      Defendant's fifth motion *in limine* to preclude the use of declarations of witnesses Mr. Gonzales, Ms. Goins-Gonzales, Dr. Bianchi, and Dr. Chauhan at trial is DENIED without prejudice;

f.      Defendant's sixth motion *in limine* to exclude Plaintiff's medical records and work restriction notices is DENIED without prejudice;

g.      Defendant's seventh motion *in limine* to exclude evidence of workers' compensation third party administrator's denials of treatment or delays in approving treatment is DENIED without prejudice;

h.      Defendant's eighth motion *in limine* to exclude draft versions of letters is DENIED without prejudice;

i.      Defendant's ninth motion *in limine* to exclude evidence of potential job openings is DENIED without prejudice.

IT IS SO ORDERED.

Dated:   **January 4, 2021**

UNITED STATES MAGISTRATE JUDGE